1999 UT 83

**STATE of Utah, Plaintiff and Appellee,**

v.

**Brett Wes CHAPOOSE, Defendant and Appellant.**

No. 980213.

Supreme Court of Utah.

Sept. 3, 1999.

Jan Graham, Att'y Gen., Kris C. Leonard, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Wesley M. Baden, Vernal, for defendant.

ZIMMERMAN, Justice:

¶ 1 Brett Wes Chapoose, convicted of a sexual offense with a child, appeals the trial court's termination of proceedings to consider putting him on probation, pursuant to Utah Code Ann. § 76–5–406.5 (Supp.1998), and its imposition of a prison sentence. Chapoose contends that the trial court did not have before it a proper psychological evaluation of Chapoose, as required by section 76–5–406.5, when it terminated the probation proceedings. Chapoose claims that an examining psychologist must personally meet the defendant to conduct the statutorily mandated "complete psychological evaluation," and that it is not sufficient if the defendant has personal contact only with a certified social worker who performs testing for the evaluating psychologist. We conclude that the legislature intended that psychological evaluations under section 76–5–406.5(1)(j) be performed in accordance with professional standards of

reliability and competency. Yet neither section 76–5–406.5(1)(j), nor the professional licensing statutes for certified social workers and psychologists,[1] addresses the question of whether a psychologist needs to personally conduct the evaluation of a defendant. Therefore, we reverse the termination of the probation proceeding and remand for an evidentiary hearing to determine the appropriate professional or industry standard for conducting psychological evaluations and for any further proceedings required by this opinion.

¶ 2 We first state the facts. After he confessed to improper sexual activity with the victim, Chapoose was charged with four counts of sodomy on a child, in violation of section 76–5–403.1 of the Code, and one count of aggravated sexual abuse of a child, in violation of section 76–5–404.1. He entered a guilty plea to one count of sodomy on a child and the other charges were dismissed. The trial court ordered a presentence investigation report and, upon defendant's request, a psychological evaluation by Intermountain Specialized Abuse Treatment ("ISAT"). Under section 76–5–406.5 of the Code, a "complete psychological evaluation" must be performed and the evaluator must reach certain specified results before a defendant can be considered for probation.[2] Utah Code Ann. § 76–5–406.5(1)(j) (Supp.1998). Mr. W. Frost, a certified social worker, interviewed Chapoose. Frost also administered many tests, the results of which were then used by Dr. C.Y. Roby, a licensed psychologist, in preparing the evaluation of Chapoose.

¶ 3 Dr. Roby's evaluation did not reach a clear conclusion as to two of the statutory prerequisites to eligibility for probation. Specifically, he did not answer whether the defendant is an "exclusive pedophile" and whether he presents "an immediate and present danger to the community if released on probation and placed in a residential sexual abuse treatment center." Utah Code Ann. § 76–5–406.5(1)(j)(i) (Supp.1998) Chapoose sought a new psychological evaluation. Chapoose raised as a further ground for a new evaluation the fact that the psychological examination was not conducted properly. Chapoose had had no personal contact with either David Morgan, M.S., or Dr. Roby, the two professionals who signed the report. Chapoose contended that a section 76–5–406.5 evaluation must include a personal interview by the evaluator.

¶ 4 The trial court agreed the report was incomplete. But the court did not order that the further evaluation be conducted by anyone other than Dr. Roby, nor did it require that the evaluation include a personal interview. Dr. Roby then filed a supplemental report stating that Chapoose was not an exclusive pedophile, but that he did present an immediate and present danger to the community if released on probation. Dr. Roby further stated that he would be willing to meet with Chapoose if he was compensated for the trip to the prison where Chapoose was being held, or if Chapoose were transported to Dr. Roby's office.

¶ 5 Chapoose filed a renewed motion for a new psychological evaluation, based on the

---

1. *See* Utah Code Ann. § 58–60–201 to –207 (1998) (social workers); Utah Code Ann. § 58–61–101 to –602 (1998) (psychologists).

2. Section 76–5–406.5 provides in relevant part:
   (1) In a case involving conviction for ... Section 75–5–403.1, sodomy on a child ... the court may suspend execution of sentence and consider probation to a residential sexual abuse treatment center only if all of the following circumstances are found by the court to be present and the court in its discretion, considering the circumstances of the offense, including the nature, frequency, and duration of the conduct, and considering the best interests of the public and the child victim, finds probation to a residential sexual abuse treatment center to be proper:

. . .
   (j) the defendant has undergone a complete psychological evaluation conducted by a professional approved by the Department of Corrections and the Department of Human Services and:
   (i) the professional's opinion is that the defendant is not an exclusive pedophile and does not present an immediate and present danger to the community if released on probation and placed in a residential sexual abuse treatment center; and
   (ii) the court accepts the opinion of the professional.
Utah Code Ann. § 76–5–406.5(1)(j)(i)–(ii) (Supp. 1998).

lack of a personal interview, and an objection to proceeding with sentencing. The court gave Chapoose the opportunity for a hearing on his motion, but Chapoose declined. The court then denied the motion on the grounds that Chapoose did not "provide evidence [that] the evaluation was improperly conducted" and because the defendant did not want a hearing. The court sentenced Chapoose to "an indeterminate term of not less than six years and which may be life in the Utah State Prison." Chapoose appealed to this court, claiming that section 76–5–406.5 of the Code requires the investigating evaluator to personally conduct the examination.

¶ 6 We set out the standard of review before turning to our analysis. When the trial court denied Chapoose's motion for a new psychological evaluation and his objection to sentencing, and then proceeded to sentence, it implicitly denied probation under section 76–5–406.5 of the Code. The decision to grant or deny probation is at the discretion of the trial court, and we review it under an abuse of discretion standard. *See* Utah Code Ann. § 76–5–406.5(1), (4) (Supp.1998); *see also State v. Gibbons,* 779 P.2d 1133, 1135 (Utah 1989). However, the trial court's determination as to whether section 76–5–406.5's mental evaluation requirement was satisfied by the submission of a report prepared by an evaluator who has not conducted a personal examination, presents a question of law, which we review for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

¶ 7 The State argues that we should not address Chapoose's claim that the psychological evaluation had to include a personal interview by the evaluator because Chapoose was given the opportunity for an interview with Dr. Roby and declined it. This left the trial court with an evaluation lacking an interview and no choice but to proceed with the sentencing. In essence, the State argues that if there was error in not having a personal interview, the error was invited. And our case law is clear that we will not permit a party to claim error at the trial level when the party asserting the error led the trial court to commit it. *See State v. Brown,* 948 P.2d 337, 343 (Utah 1997); *State v. Dunn,* 850 P.2d 1201, 1220 (Utah 1993).

¶ 8 We agree with the State's statement of the invited error doctrine, but find it to have no application here. After Dr. Roby turned in the first evaluation, Chapoose challenged the trial court's interpretation of the statute and argued that the evaluator had to personally interview the one being evaluated. The trial court rejected that contention and ordered Dr. Roby to answer two questions left open in the initial evaluation. Dr. Roby did this without seeing Chapoose, finding him not to meet the probation criteria set out in the statute. Only then did Dr. Roby offer the possibility of an interview. Chapoose contends that once the evaluator was fully committed, he considered the harm to have been done. The only remedy was for Chapoose to obtain a fresh evaluation by another person. And the only way to get that was to go through sentencing and then appeal, which he did. We agree with Chapoose. There was no invited error here.

¶ 9 We turn next to section 76–5–406.5 of the Code. It provides that when a defendant has been convicted of sodomy on a child, the court may suspend the sentence and consider probation to a residential sexual abuse treatment center only if all of the following circumstances are found by the court to be present:

(j) the defendant has undergone a complete psychological evaluation conducted by a professional approved by the Department of Corrections and the Department of Human Services and:

(i) the professional's opinion is that the defendant is not an exclusive pedophile and does not present an immediate and present danger to the community if released on probation and placed in a residential sexual abuse treatment center; and

(ii) the court accepts the opinion of the professional.

Utah Code Ann. § 76–5–406.5(1)(j)(i)–(ii) (Supp.1998). Chapoose contends that: (i) the term "psychological evaluation" clearly means that the evaluation must be completed by a psychologist, and (ii) the phrase "conducted by" means that the evaluating psychologist should be the individual who actual-

ly interviews and assesses the defendant. The State responds that section 76–5–406.5 should be interpreted according to its plain meaning. *See, e.g., Morton Int'l, Inc. v. State Tax Comm'n*, 814 P.2d 581, 590 (Utah 1991). It argues that because the statute is silent as to how the professional is to perform the "complete psychological evaluation," there is no reason to construe the statute as requiring a personal interview. The term "conducted by" could mean that the examining professional is only responsible for directing the administration of the tests, and that a personal meeting is not necessary. In the present situation, for example, Dr. Roby is the professional approved by the Department of Corrections and the Department of Human Services to perform these "complete psychological evaluation[s]." While Mr. Frost, the certified social worker who met with Chapoose, is not an approved professional, the State contends that there is nothing in the statute which precludes the selected "professional" from supervising the work of a suitable person, such as a certified social worker, who administers tests and performs interviews and from relying on that work product in preparing the ultimate evaluation for the court.[3]

¶ 10 There is nothing in the language of the statute that helps us on this point, and no relevant case law has been found.[4] Therefore, we must attempt to divine the legislature's purpose from the language of the statute. *See State v. Hunt*, 906 P.2d 311, 312 (Utah 1995) (" 'The best evidence of the true intent and purpose of the Legislature in enacting the Act is the plain language of the Act.' " (quoting *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984))). The legislature provided that the court, faced with the contention that a given defendant should be put on probation after being convicted of certain forms of child sexual abuse, could not do so without first having received an opinion from "a professional" approved by the Department of Corrections and the Department of Human Services, after "a complete psychological evaluation" has been "conducted" by that professional, that the defendant met the criteria set forth in subpart (j) of section 76–5–406.5. It is clear that the legislature wanted to preclude courts from putting these offenders on probation unless it had first been determined by a competent mental health professional that these persons did not present an unreasonable risk to the public. And it seemingly contemplated that that professional be at least a psychologist. The statute is silent as to how that professional is to carry out his or her charge. However, given that the evaluation stands as a bar to consider a convicted person for probation unless the professional certifies that the person being considered meets the statutory criteria, it is only reasonable to assume that the legislature intended that the person performing the evaluation would proceed in a manner consistent with his or her calling's highest professional standards.

---

3. The statute that licenses psychologists includes within the definition of the "practice of psychology" the "psychological testing and evaluation or assessment of personal characteristics." Utah Code Ann. § 58–61–102(9)(a)(iii) (1998). This plainly would include within its scope the performance of the "complete psychological evaluations" contemplated by section 76–5–406.5. On the other hand, the statute under which social workers are licensed, section 58–60–202, does not include within the definition of the "practice of certified social work" psychological testing and evaluation. *Id.* § 58–60–202(3) (1998). Therefore, it seems clear from the licensing statutes that the legislature contemplated that to perform the mandated evaluations, the professional in question must at least be a licensed psychologist.

4. The State cites cases which it claims bolster its argument. For example, in *Williamson v. State*, 330 So.2d 272, 275 (Miss.1976), a challenge was made concerning an expert witness who was testifying about an appellant's mental capability, because the testimony was based on a report from two clinical technicians who performed the psychological testing. The court allowed the testimony to be admitted, and said that the technicians did not have to be held up to such a high standard because these tests were routine. Another case cited was *Shurtleff v. Jay Tuft & Co.*, 622 P.2d 1168, 1173 (Utah 1980), in which an expert was allowed to testify about information where he had no personal knowledge and never personally observed what he was testifying about. These cases are inapposite. We are not discussing the admissibility of expert testimony, but rather, what the proper procedure is, under section 76–5–406.5, for administering the required psychological evaluation.

¶ 11 The record before us is silent as to what is required by the relevant professional standards. Yet we think those standards are determinative of the question before us—does the statute contemplate a personal interview by the evaluator? If the relevant professional standards call for personal interviews by the individual ultimately responsible for the evaluation, then there is no basis for concluding, as the State argues, that the legislature intended to permit the professional to perform an evaluation by proxy. On the other hand, if the relevant professional standards permit an evaluation to be performed without a personal interview by the evaluator, then there is no basis for concluding that Chapoose was deprived of his rights under the statute.

¶ 12 Because there is no evidence before us on this critical issue, we vacate the sentence and remand this case for a hearing before the district court to determine the professional standard of a licensed psychologist for conducting a "complete psychological evaluation" of one convicted of child sexual abuse for the purpose of determining eligibility for consideration of probation under section 76–5–406.5 of the Code. To facilitate any eventual appellate review of that determination, the trial court should enter detailed findings and conclusions. If the trial court determines that under the applicable professional standards the evaluator should personally interview the convicted person before preparing the evaluation, then it should vacate the sentence, order a new evaluation by a different professional, and conduct the probation determination after receiving the results. On the other hand, if it determines that the evaluation was conducted in a manner that satisfied the relevant professional standards, it should enter an order to that effect and resentence. If Chapoose is dissatisfied with that result, he is free to bring that matter back before this court.[5]

¶ 13 We, therefore, reverse and remand for a hearing in accordance with this opinion.

¶ 14 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART and Justice RUSSON concur in Justice ZIMMERMAN'S opinion.

---

5.  Chapoose renewed his argument on appeal that the denial of a new psychological evaluation was a violation of his due process rights. Since we have not determined that it was error to deny a new psychological evaluation, we do not find it necessary to address this argument.