2002 UT 12

## STATE of Utah, Plaintiff and Appellee,

v.

## Mark Paul HELMS, Defendant and Appellant.

No. 20000587.

Supreme Court of Utah.

Jan. 25, 2002.

Mark L. Shurtleff, Att'y Gen., Joanne C. Slotnik, Asst. Att'y Gen., Stephen N. Mercer, Salt Lake City, for plaintiff.

Kent R. Hart, Robert Heineman, Salt Lake City, for defendant.

HOWE, Chief Justice.

## INTRODUCTION

¶ 1 Defendant Mark Paul Helms pled guilty to two counts of attempted aggravated sexual assault in violation of Utah Code Ann. § 76–5–404 (1999), and three counts of dealing in harmful material in violation of § 76–10–1206 (1999). He was sentenced to three years to life in prison for each count of aggravated sexual assault and zero to five years in prison for each count of dealing in harmful material to a child. Helms appeals, contending that (1) the trial court abused its discretion in ordering him to serve the five sentences consecutively, and (2) the trial court committed plain error by not issuing findings of fact in conjunction with its sentencing order.

## BACKGROUND

¶ 2 Helms admitted that from 1991 to 1998 he repeatedly perpetrated illegal sex acts with seven young teenage boys, including

oral sex, anal sex, mutual masturbation, and the viewing of pornography.

¶ 3 In April 1998, one of the boys told his parents that Helms had abused him. They quickly took the accusation to the police. Helms admitted that he had abused the boy and pled guilty to one count each of sexual abuse of a child and dealing in material harmful to a minor. At that time, he also admitted to various lewd acts committed prior to 1991, including masturbating in front of teenage boys and girls. He did not, however, disclose his abuse of the other six boys; in fact, he specifically denied that any other abuse had taken place. At the recommendation of several mental health counselors who felt Helms was "sufficiently motivated to complete a sex offender program," the trial court sentenced him to one year in the Davis County Jail with stringent probation requirements upon the completion of his incarceration.

¶ 4 Three months into his incarceration, another victim disclosed Helms' abuse of him, and the State filed the charges forming the nucleus of this case. Thereafter, Helms admitted his abuse of the other six boys. He subsequently pled guilty to two counts of attempted aggravated sexual assault in violation of section 76–5–404, and to three counts of dealing in harmful material to a child in violation of section 76–10–1206.

¶ 5 Prior to sentencing, the trial court requested that the Department of Corrections conduct a presentence investigation. The presentence report was delivered to the trial court four days before the sentencing hearing. The report contained extensive information, including two detailed descriptions of Helms' illegal behavior, a victim impact statement, a criminal history assessment, an aggravating and mitigating circumstances report, and two psychological evaluations conducted prior to his incarceration.

¶ 6 At the sentencing hearing, Helms corrected several inaccuracies in the presentencing report. He then personally addressed the court, expressing his remorse for his actions and pledging to repay his victims. Prior to imposing the sentence, the trial court remarked:

Well, the court has gone over this presentence report rather carefully, and read it, and what has taken place. I just read a letter from your sister also. And, of course, the court is realistic of this sort of thing. This cannot be tolerated as far as society's concerned. The action is just completely outside the realm of a normal situation.

The court then sentenced Helms to three years to life in prison for both counts of aggravated sexual assault and zero to five years in prison for each of the three counts of dealing in harmful material to a child. The court ordered that he serve the five sentences consecutively.

¶ 7 Helms appeals, contending that the trial court abused its discretion by imposing consecutive sentences without considering all of the statutory factors relevant to that decision. He also asserts that the trial court's failure to address the statutory factors on the record is plain error because it prevents this court from performing a meaningful review. Accordingly, Helms seeks a new sentencing hearing. We will address each of these issues in turn.

## ANALYSIS

### I. ABUSE OF DISCRETION

¶ 8 This court "traditionally afford[s] the trial court wide latitude and discretion in sentencing." *State v. Woodland,* 945 P.2d 665, 671 (Utah 1997). Generally, we will reverse a trial court's sentencing decision only if it is an abuse of the judge's discretion. *State v. Gibbons,* 779 P.2d 1133, 1135 (Utah 1989). A trial court abuses its discretion in sentencing when, among other things, it " 'fails to consider all legally relevant factors.' " *State v. McCovey,* 803 P.2d 1234, 1235 (Utah 1990) (quoting *Gibbons,* 779 P.2d at 1135).

¶ 9 Section 76–3–401 provides that a trial court may impose consecutive sentences when a defendant has been convicted of more than one felony offense. Utah Code Ann. (1989). Section 76–3–401(4) lists the factors that the court must consider before it imposes consecutive sentences. A trial court "shall consider the gravity and circumstances of the

offenses and the history, character, and rehabilitative needs of the defendant." Utah Code Ann. § 76–3–401(4) (1999). Helms argues that the trial court abused its discretion by considering only the "gravity and circumstances" of the offense and by failing to consider his history. We disagree.

¶ 10 Helms offers no support for his assertion that the trial court neglected to consider the factors listed in section 76–3–401(4). Instead, he contends that the trial court failed to state the extent to which it considered each of the factors in the sentencing order. He encourages this court to assume that the trial court did not consider the factors at all, simply because it did not address each of the factors on the record.

¶ 11 However, "as a general rule 'this court upholds the trial court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings.' " *State v. Robertson,* 932 P.2d 1219, 1234 (Utah 1997) (quoting *State v. Ramirez,* 817 P.2d 774, 788 n. 6 (Utah 1991)). As we noted in *Robertson,* instances where this assumption should not be made are normally limited to situations where (1) an ambiguity of facts makes the assumption unreasonable, (2) a statute explicitly provides that written findings must be made, or (3) a prior case states that findings on an issue must be made. *Id.;* see also *State v. Labrum,* 925 P.2d 937, 939–40 (Utah 1996) (stating court will not assume written findings were made where statute specifically requires written findings to be made); *State v. Nelson,* 725 P.2d 1353, 1356 (Utah 1986) (stating court will not assume findings were made where a prior case requires them). Absent these circumstances, we will not assume that the trial court's silence, by itself, presupposes that the court did not consider the proper factors as required by law. To do so would trample on the deference this court usually gives to the sentencing decisions of a trial court. *See Woodland,* 945 P.2d at 671 (stating that this court gives deference to the trial court when reviewing issues of sentencing).

¶ 12 Here, the trial court's sentencing order—though lacking in detail—was not accompanied by any of the circumstances listed above that would cause us to question whether the court had made the proper findings. Neither our case law nor our statutes require a trial court to make specific findings of fact in a sentencing order. Furthermore, the brevity of the sentencing order does not make the order and the facts surrounding the order so ambiguous that it would be unreasonable for us to conclude that the trial court properly considered the factors in section 76–3–401(4).

¶ 13 Indeed, far from being ambiguous, the record before us actually contains evidence to suggest that the trial court did consider all of the factors. Although the trial court did not in the text of the sentencing order state to what extent it considered each of the statutory factors at the sentencing hearing, it did state:

> The court has gone over this presentence report rather carefully, and read it, and what has taken place. I just read a letter from [defendant's] sister also. And, of course, the court is realistic of this sort of thing.

As noted above, the presentence report contains detailed information regarding not only the "gravity and circumstances of the offenses," but also the "history, character, and rehabilitative needs of the defendant." Much of the information regarding Helms' history, character, and rehabilitative needs is repeatedly presented in the report. The report contains two psychological evaluations with information regarding Helms' history, character, and rehabilitative needs; two accounts of Helms' criminal behavior; several statements by Helms recognizing the seriousness of his crimes, remorse for his actions, and willingness to make restitution; and several sentencing recommendations. All this, the trial court stated, it had read "rather carefully," which evidences that the trial court did consider Helms' history, character, and rehabilitative needs.

¶ 14 Helms goes to great lengths to point out indicia that tend to suggest a sentencing outcome more to his favor. Specifically, he asserts that the trial court overlooked his "acceptance of responsibility, remorse, cooperation with law enforcement, positive efforts

in jail, and the significant steps he has taken toward rehabilitation." In making this assertion, Helms implies that the trial court could not have considered all the factors and then ordered as it did. However, the fact that Helms views his situation differently than did the trial court does not prove that the trial court neglected to consider the factors listed in section 76–3–401(4). Indeed, we have recognized that sentencing reflects the personal judgment of the court, and consequently, a sentence imposed by the trial court should be overturned only when it is inherently unfair or clearly excessive. *Woodland,* 945 P.2d at 671.

¶ 15 We distinguish today's holding from that of *State v. Galli,* 967 P.2d 930 (Utah 1998), where we applied section 76–3–401(4) and held that the trial courts involved abused their discretion. There, we were presented with a written record in which the trial courts involved rendered detailed explanations for the sentences that they imposed. The record clearly reflected that the trial courts failed to give "adequate weight to certain mitigating circumstances." *Galli,* 967 P.2d at 938. Consequently, based on the record before us, we overturned their sentencing decision. *Id.* Here, the record does not disclose any such omission. We must therefore defer to the trial court's judgment absent a showing by defendant that the trial court failed to consider the appropriate factors.

¶ 16 In short, the burden is on Helms to show that the trial court did not properly consider all the factors in section 76–3–401(4). The proffer of a brief sentencing order and the existence of circumstances favorable to Helms do not meet this burden.

## II. PLAIN ERROR

¶ 17 To obtain relief "from an alleged error that was not properly objected to" an appellant must show the existence of plain error. *State v. Saunders,* 1999 UT 59, ¶ 78, 992 P.2d 951. To demonstrate plain error, an appellant must establish that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant."

*State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993). Helms correctly recognizes that "Utah law does not require sentencing judges to enter specific findings on the record when imposing consecutive sentences," yet he argues that as a matter of policy, we should now begin to require such detailed findings in order to facilitate our appellate review. We eschew the invitation. Because no authority requires the trial court to enter specific findings on a sentencing order, the court's failure to do so cannot be considered error.

## CONCLUSION

¶ 18 We affirm the trial court's imposition of consecutive sentences.

¶ 19 Associate Chief Justice RUSSON, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Chief Justice HOWE'S opinion.