2003 UT App 432

**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Jose Orlando VALDOVINOS, Defendant and Appellant.**

**No. 20020410–CA.**

Court of Appeals of Utah.

Dec. 11, 2003.

Kent R. Hart, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and J. Frederic Voros Jr., Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges DAVIS, GREENWOOD, and THORNE, Jr.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant, Jose Valdovinos, appeals from the trial court's denial of his request for probation and its imposition of three consecutive sentences arising out of three separate charges of aggravated robbery in violation of Utah Code Annotated section 76–6–302 (1999). Defendant argues that the trial court abused its discretion when it failed to consider all legally relevant factors in making its sentencing determination. The State argues that this court has jurisdiction to review only one of Defendant's sentences because Defendant's notice of appeal listed only one of the three case numbers under which he was sentenced. The State further argues that the trial court properly considered all legally relevant factors in denying Defendant's request for probation and ordering his sentences to run consecutively. We affirm.

## BACKGROUND

¶ 2 During April and May of 2001, Defendant, along with three adult males, participated in three home robberies in Salt Lake City, Utah. At the time of these robberies, Defendant was seventeen years of age, although he turned eighteen just eight days after commission of the last robbery. During each of the robberies, Defendant and his accomplices forced their way into the homes with guns, and subdued the occupants.

¶ 3 In the first robbery, the assailants forced the adult males to lie on the floor, and tied their hands behind their backs with speaker wire. Defendant then took the women and children downstairs to the basement at gunpoint. The robbers left the home with a camcorder, a cell phone, and approximately $5,500 in cash.

¶ 4 During the second robbery, the intruders forced one of the occupants to lie face down while a gun was pointed at his head, and placed another occupant on a couch, ordering him to look down at the floor. When the third occupant appeared, the assailants tied him up with the cord of an iron. One of the assailants then proceeded to stab one of the victims with a steak knife causing him to sustain a minor cut in his back. The robbers took a video cassette recorder, a video game system, approximately $420 in cash, and approximately $1,000 worth of jewelry. Apparently, Defendant's role in this robbery was to stand guard over the home's occupants.

¶ 5 In the third robbery, the intruders used speaker wire to tie up a husband and wife, while their children, ages eleven and fourteen, watched. When the wife began to experience an asthma attack, her daughter was allowed to retrieve her inhaler. The robbers left the house with credit cards, video games, jewelry, compact discs, a camcorder, a video cassette recorder, and approximately $200 in cash. Defendant's precise role in this robbery is unclear.

¶ 6 Shortly after the third robbery, Defendant was apprehended by police when one of the victims identified him from a photo spread. Although Defendant initially denied

any involvement in the robberies, he eventually admitted that he had participated in all three of them. However, he refused to reveal the identity of his accomplices.

¶ 7 On May 31, 2001, the State filed an information in juvenile court, alleging, inter alia, that Defendant had committed aggravated robbery on May 14, 2001. By July 2, 2001, the State had filed forty-five charges against Defendant in connection with all three of the home robberies. All of the charges were listed under one case number.

¶ 8 On September 4, 2001, Defendant waived his right to a preliminary hearing and the juvenile court bound him over to district court to stand trial as an adult.[1] Shortly thereafter, Defendant pleaded guilty to three counts of aggravated robbery—one count for each home robbery—with weapons and gang enhancements.[2] In return, the State agreed to dismiss the remaining forty-two charges.

¶ 9 After Defendant pleaded guilty, the trial court scheduled a consolidated sentencing hearing for all three cases. The trial court also ordered Defendant to undergo a sixty-day presentence evaluation.

¶ 10 Based on the trial court's order, Adult Probation and Parole (AP & P) prepared a Presentence Investigation Report and the Department of Corrections prepared a Diagnostic Evaluation Report. In addition, Defendant underwent both individual and group psychological evaluations. In its twenty-one page Presentence Investigation Report, AP & P discussed at length each of the offenses Defendant committed, including Defendant's age at the time of the offenses. In addition, the Presentence Investigation Report detailed Defendant's criminal history, family background and living situation, education and employment history, gang affiliations and substance abuse history, mental and physical health, and attitude and orientation. Based on this information, AP & P concluded that probation was not appropriate. Instead, AP & P recommended that Defendant be "sentenced to the indeterminate term as prescribed by law to the Utah State Prison, with the sentences to run consecutively." The individual and group psychological evaluation reports, and the Diagnostic Evaluation Report, each of which also considered Defendant's history and amenability for rehabilitation, similarly recommended that Defendant be incarcerated.

¶ 11 On April 1, 2002, the trial court conducted Defendant's sentencing hearing. At the hearing, Defendant's attorney drew the court's attention to Defendant's youth, his low IQ, and his limited criminal history, and asked the court to place Defendant on probation. The trial court responded by noting that it had "reviewed all of the [presentence] information," and that "[t]his [was] a serious home invasion series.... And [it] need[ed] to take the very, very egregious, violent nature of these offenses into ... consideration at sentencing." The trial court also made reference to Defendant's "low IQ," his "supportive, law-abiding family," and acknowledged that "there may be some mitigation that [Defendant] went and got medication for someone because [he was] being merciful to them." However, based on its review of the presentence information, the trial court concluded that Defendant continued to be "a very real danger to the community," and that consequently he "was not a candidate for probation." The trial court then sentenced Defendant to prison on each of the three counts for five years to life and ordered the prison terms to run consecutively. Shortly thereafter, the trial court entered a single judgment and commitment order for all three sentences.

¶ 12 On April 30, 2002, Defendant timely filed a notice of appeal "from the judgment and commitment entered against him." However, his notice of appeal referenced only one of the case numbers under which he was sentenced.

## ISSUES AND STANDARDS OF REVIEW

¶ 13 The State argues that because Defendant's notice of appeal referenced only one of

---

1. After the case was transferred to district court, the charges stemming from the three robberies were assigned three different case numbers: 011913948, 011913950, and 011913951.

2. The State subsequently dropped the weapons and gang enhancements.

**1170**

the case numbers under which he was sentenced, this court does not have jurisdiction to review the other two sentences. "We determine whether [a] Notice of Appeal is adequate to grant this court jurisdiction as a matter of law." *In re B.B.*, 2002 UT App 82,¶ 4, 45 P.3d 527, *cert. granted,* 53 P.3d 1 (Utah 2002).

■ ¶ 14 On appeal, Defendant challenges the trial court's denial of his request for probation and its imposition of consecutive sentences, on the basis that the court failed to consider relevant mitigating circumstances. The sentencing decision of a trial court is reviewed for abuse of discretion. *See State v. Houk*, 906 P.2d 907, 909 (Utah Ct.App.1995) (per curiam). This includes the decision to grant or deny probation, *see State v. Chapoose*, 1999 UT 83,¶ 6, 985 P.2d 915, and the decision to impose consecutive sentences. *See State v. Helms*, 2002 UT 12,¶ 8, 40 P.3d 626; *State v. Schweitzer*, 943 P.2d 649, 651 (Utah Ct.App.1997). "An abuse of discretion results when the judge 'fails to consider all legally relevant factors' or if the sentence imposed is 'clearly excessive.' " *State v. McCovey*, 803 P.2d 1234, 1235 (Utah 1990) (citations omitted). "An appellate court may only find abuse 'if it can be said that no reasonable [person] would take the view adopted by the trial court.' " *Houk*, 906 P.2d at 909 (alteration in original) (quoting *State v. Wright*, 893 P.2d 1113, 1120 (Utah Ct.App.1995)).

## ANALYSIS

### I. Jurisdiction

■ ¶ 15 The State argues that when Defendant filed his notice of appeal on April 30, 2002, he appealed only the sentence imposed in case number 011913948, and therefore, this court does not have jurisdiction to review the consecutive sentences imposed in case numbers 011913950 and 011913951. In response, Defendant claims that the State, the juvenile court, and the trial court treated the three cases as one consolidated prosecution. Therefore, according to Defendant, appealing the sentence imposed in case 011913948 was sufficient to notify the State and the courts that he was also appealing the

sentences imposed in case numbers 011913950 and 011913951.

¶ 16 An appeal is properly raised if a notice of appeal " 'designate[s] the judgment or order, or part thereof, appealed from.' " *In re B.B.*, 2002 UT App 82,¶ 9, 45 P.3d 527 (quoting Utah R.App. P. 3(d)), *cert. granted,* 53 P.3d 1 (Utah 2002). "[T]his requirement is jurisdictional because ' "the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case." ' " *Id.* (quoting *Jensen v. Intermountain Power Agency*, 1999 UT 10,¶ 7, 977 P.2d 474 (other citations omitted)).

¶ 17 Despite the apparent rigidity of rule 3(d) of the Utah Rules of Appellate Procedure, "[n]otices of appeal are to be liberally construed." *In re B.B.*, 2002 UT App 82 at ¶ 9, 45 P.3d 527 (alteration in original) (quotations and citations omitted). In *In re B.B.*, we considered whether we had jurisdiction to review an appeal from an order granting attorney fees when the notice of appeal failed to specifically identify the attorney fee order. *See id.* at ¶ 4. This issue arose after the trial court denied the appellants' motion entitled, "Motion to Quash the Order to Show Cause," and entered two separate orders: (1) Findings of Fact, Conclusions of Law and Order; and (2) Order of Attorney Fees and Judgment. *Id.* at ¶ 3. In their notice of appeal, the appellants stated that they were appealing "the ruling of the court on the Motion to Quash and Objection to Setting Hearings without re-opening the file," but did not refer to the second order. *Id.* at ¶ 10. We concluded that although the notice provided was "not ideal," it sufficiently notified the opposing parties that both of the trial court's orders were being appealed, "particularly where the orders b[ore] the same date." *Id.* (footnote omitted); *see also Scudder v. Kennecott Copper Corp.*, 886 P.2d 48, 49–50 (Utah 1994) (holding notice of appeal which failed to designate that appeal was being taken from summary judgment as well as from final judgment was adequate because " '[t]here [wa]s no requirement that the notice designate intermediate orders which [were] to be raised as issues on appeal' " (first alteration in original) (citation omit-

ted)); *U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶¶ 26–27, 990 P.2d 945 (holding appeal from final order denying motion entitled "Motion to Revise Order and Judgment Dismissing Plaintiff's Complaint" encompassed appeal from summary judgment although appellant did not identify summary judgment in notice of appeal).

¶ 18 Although the aforementioned cases support the general proposition that a notice of appeal may be adequate even if it does not strictly adhere to the requirements of rule 3(d), no Utah case has specifically addressed the jurisdictional issue raised in this case. For guidance in resolving that issue, we turn to *United States v. Grant*, 256 F.3d 1146 (11th Cir.2001).

¶ 19 In *Grant*, the Eleventh Circuit considered whether a notice of appeal sufficiently complied with rule 3(c) of the Federal Rules of Appellate Procedure [3] to vest the court with jurisdiction to review two judgments on appeal. *See id.* at 1151. The defendant had been convicted of conspiracy and firearms charges and for failure to appear. *See id.* at 1149–50. After a consolidated sentencing hearing, the trial court entered a single judgment on the conspiracy and firearms charges, and a separate judgment on the failure to appear charge. *See id.* When the defendant filed his notice of appeal, he only listed the case number for the failure to appear charge. *See id.* at 1150. Despite the defendant's omission, the court held that his notice of appeal indicated an intent to appeal both cases because "a consolidated sentencing hearing on both cases was held in district court, and there was only one judgment and commitment order entered for both cases." *Id.* at 1151.

¶ 20 In this case, like the defendant in *Grant*, Defendant was sentenced in one consolidated hearing and there was only one judgment and commitment order entered against him.[4] Moreover, all three of Defendant's sentences were imposed on the same date, a fact which this court placed particular emphasis on in *In re B.B.*, when we held that the appellants had provided adequate notice of their appeal to the opposing parties. *See In re B.B.*, 2002 UT App 82 at ¶ 10, 45 P.3d 527. Finally, the State did not argue, nor is there any evidence in the record, that it was prejudiced by Defendant's failure to identify all three sentences in his notice of appeal. *See Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 8, 977 P.2d 474 (noting that notice of appeal was inadequate because failure to identify final judgment prejudiced opposing party). Therefore, we hold that Defendant's notice of appeal, though "not ideal," *In re B.B.*, 2002 UT App 82 at ¶ 10, 45 P.3d 527, adequately notified the State and the courts that he intended to appeal all three of his sentences, and thereby complied with the requirements of rule 3(d) of the Utah Rules of Appellate Procedure.[5] Accordingly, this court has jurisdiction to review all three of Defendant's sentences.[6]

## II. Sentencing

¶ 21 Defendant argues that the trial court abused its discretion by denying Defendant's request for probation and by imposing consecutive sentences because the court failed to consider relevant mitigating circumstances.

### A. Probation

¶ 22 Defendant argues that the trial court's denial of his request for probation

---

**3.** Rule 3(c) of the Federal Rules of Appellate Procedure reads in relevant part as follows:

> Contents of the Notice of Appeal.
> (1) The notice of appeal must:
> (A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice . . . ;
> (B) designate the judgment, order, or part thereof being appealed; and
> (C) name the court to which the appeal is taken.

**4.** Although by no means dispositive, we also note that Defendant was not represented by counsel at the time he filed his notice of appeal. Conse-

quently, "because of his lack of technical knowledge of law and procedure," Defendant "should be accorded every consideration that may reasonably be indulged." *Lundahl v. Quinn*, 2003 UT 11, ¶ 3, 67 P.3d 1000 (quotations and citations omitted).

**5.** Despite our holding today, we strongly encourage appellants to reference all judgments appealed from in their notices of appeal.

**6.** Because this court has jurisdiction to review all three sentences, we do not address Defendant's argument that this matter should be remanded for sentencing nunc pro tunc.

was an abuse of its discretion because the court failed to adequately weigh mitigating evidence supporting probation. According to Defendant, the trial court did not properly consider mitigating factors such as his extreme youth, his supportive family, his lesser role in the crimes he committed, and his below average intelligence. We disagree.

¶ 23 A "defendant is not entitled to probation, but rather the [trial] court is empowered to place the defendant on probation if it thinks that will best serve the ends of justice and is compatible with the public interest." *State v. Rhodes*, 818 P.2d 1048, 1051 (Utah Ct.App.1991). " 'The granting or withholding of probation involves considering intangibles of character, personality and attitude, of which the cold record gives little inkling.' " *Id.* at 1049 (citation omitted). Therefore, "the problem of probation must of necessity rest within the discretion of the judge who hears the case." *Id.* (quotations and citation omitted). Only if it is " 'clear that the actions of the judge were so *inherently unfair* as to constitute an abuse of discretion,' " will a reviewing court overturn a trial court's sentence. *Id.* at 1051 (citation omitted).

¶ 24 Despite Defendant's assertions to the contrary, there is substantial evidence in the record to support the trial court's denial of Defendant's request for probation. Defendant pleaded guilty to three home invasion robberies which were particularly heinous in nature. The victims were threatened at gunpoint, and many of them were forced to lie face down on the floor with their hands tied behind their backs. During the second robbery, a co-defendant stabbed one of the victims in the back, and during the third robbery, a husband and wife were tied up, while their children, ages eleven and fourteen, watched. In each case, Defendant and his accomplices left the home with a significant amount of cash and other valuable property.[7]

¶ 25 In denying Defendant probation, the record reveals that the trial court not only took the nature of Defendant's crimes into account, but also relied heavily on his presentence diagnostics and evaluations. Although each of the presentence reports contained a recommendation that Defendant be incarcerated, these recommendations were made only after a discussion of factors such as Defendant's age at the time he committed the offenses, his supportive family, his limited criminal history, the exact extent of his role in each of the offenses, and his low IQ.

¶ 26 Based on the extreme nature of Defendant's crimes, and the recommendation in each of Defendant's presentence reports that he be incarcerated, we cannot say that the trial court's decision not to grant Defendant probation was "inherently unfair." *Rhodes*, 818 P.2d at 1051 (quotations and citation omitted). Therefore, we hold that the trial court did not abuse its discretion in denying Defendant's request for probation.

### B. Consecutive Sentences

■ ¶ 27 Defendant also argues that the trial court abused its discretion by imposing consecutive sentences without taking into account all legally relevant factors. Specifically, Defendant argues that while the trial court considered the seriousness of the offenses Defendant committed when it made its sentencing decision, it failed to adequately weigh Defendant's background and rehabilitative needs.

¶ 28 A trial court abuses its discretion in sentencing when it " 'fails to consider all legally relevant factors' or if the sentence imposed is 'clearly excessive.' " *State v. McCovey*, 803 P.2d 1234, 1235 (Utah 1990) (citations omitted). When deciding whether to impose consecutive sentences, "[a] court shall consider the gravity and circumstances of the offenses and the history, character, and rehabilitative needs of the defendant...." Utah Code Ann. § 76–3–401(4)

---

7. Defendant has cited *State v. Galli*, 967 P.2d 930 (Utah 1998), to support his argument that the trial court should have placed him on probation. However, Defendant's reliance on *Galli* is misplaced. There, the court held that the trial court had abused its discretion in imposing consecutive sentences because of its refusal to give weight to certain mitigating evidence such as the defendant's use of a pellet gun rather than a real gun, the defendant's voluntary confession to the offenses he committed, and his likelihood of rehabilitation. *See id.* at 938. No such mitigating evidence exists in this case.

(1999).[8] However, "the burden is on [the defendant] to show that the trial court did not properly consider all the factors in section 76–3–401(4)." *State v. Helms,* 2002 UT 12, ¶ 16, 40 P.3d 626.

¶ 29 Defendant does not dispute that when the trial court imposed consecutive sentences, it took into account "the gravity and circumstances of the offenses." Utah Code Ann. § 76–3–401(4). Rather, Defendant's central argument is that when the trial court made its sentencing decision, it failed to sufficiently consider "all legally relevant factors." *McCovey,* 803 P.2d at 1235 (citation omitted) In particular, Defendant claims that the court did not consider his background— including his youth, his minimal criminal history, his supportive family, and his low IQ— or his rehabilitative needs.

¶ 30 Although the trial court did not explicitly address the enumerated factors in section 76–3–401(4), there is ample evidence in the record that the court considered these factors at the time of Defendant's sentencing. For example, at the sentencing hearing, the trial court referenced Defendant's "supportive, law-abiding family," and mentioned that it had considered Defendant's "low IQ," and the fact that he retrieved medication for a victim during one of the robberies.[9] Moreover, mitigating evidence including Defendant's extreme youth, his supportive family, and his limited criminal history was presented to the trial court, through Defendant's attorney, prior to the imposition of Defendant's sentences.

¶ 31 Finally, as noted previously, Defendant's background, character, personal history, and likelihood of being rehabilitated were described in detail for the trial court in Defendant's presentence reports. The trial court made it very clear that it had carefully reviewed these reports prior to sentencing Defendant, and although the court did not specifically reference details of these reports, the Utah Supreme Court has noted that a

similar review of presentence information by a trial court was sufficient to demonstrate that a defendant's history, character, and rehabilitative needs had been considered at the time of sentencing. *See Helms,* 2002 UT 12 at ¶ 13, 40 P.3d 626.

¶ 32 To bolster his argument, Defendant cites *State v. Strunk,* 846 P.2d 1297 (Utah 1993), in which a sixteen-year-old received three consecutive sentences. *See id.* at 1298. One of the sentences was a life sentence and the other two sentences were mandatory minimum terms, totaling twenty-four years. *See id.* The court held that in imposing consecutive rather than concurrent sentences, the trial court had "abused its discretion in failing to sufficiently consider defendant's rehabilitative needs in light of his extreme youth and the absence of prior violent crimes." *Id.* at 1302.

¶ 33 However, *Strunk* is inapposite to this case. There, the court was concerned that "the twenty-four-year term rob[bed] the Board of Pardons of any flexibility to parole Strunk sooner," because the defendant would have had to "spend a minimum of twenty-four years in prison before being eligible for parole." *Id.* at 1301. Unlike the defendant in *Strunk,* Defendant does not face two additional mandatory minimum sentences on top of a life sentence. Rather, Defendant received three consecutive sentences of five years to life, with no mandatory minimum term. Therefore, the Board of Pardons would not be deprived of its flexibility to parole Defendant earlier.

¶ 34 Based on the foregoing, we conclude that Defendant has failed to meet his burden of demonstrating that the trial court did not consider all the factors enumerated in Utah Code Annotated section 76–3–401(4). *See Helms,* 2002 UT 12 at ¶ 16, 40 P.3d 626. Therefore, we hold that the trial court did not abuse its discretion when it sentenced Defendant to three consecutive prison terms.

8. Utah Code Annotated section 76–3–401 was amended effective July 1, 2002. However, we cite to the 1999 version of the statute because it was in effect at the time of Defendant's sentencing.

9. However, as the State correctly notes, it is not clear from the Presentence Investigation Report whether, when one of the victims suffered an asthmatic attack, it was Defendant who allowed the victim's daughter to retrieve the victim's medication.

## CONCLUSION

¶ 35 Although Defendant failed to list all three case numbers in his notice of appeal, we hold that he sufficiently complied with the specificity requirement of rule 3(d) of the Utah Rules of Appellate Procedure, thereby allowing this court to review all three sentences that the trial court imposed. We base our holding on the fact that Defendant's three sentences were imposed during one consolidated sentencing hearing, after which, only one judgment and commitment order was entered, and the State neither claims nor is there any evidence it was prejudiced.

¶ 36 With respect to the trial court's denial of Defendant's request for probation and its imposition of three consecutive sentences, we hold that the trial court did not abuse its discretion. Defendant pleaded guilty to three egregious home robberies, one of which resulted in a victim being stabbed and another where children watched while the assailants tied up their parents. Moreover, all of the presentence reports submitted to the court recommended that Defendant be incarcerated. Although the trial court did not explicitly refer to Defendant's history, character, and rehabilitative needs at the time of Defendant's sentencing, we find that there is ample evidence in the record that the trial court adequately considered these factors. We therefore affirm.

¶ 37 WE CONCUR: JAMES Z. DAVIS, Judge and WILLIAM A. THORNE JR., Judge.