2006 UT App 420

**STATE of Utah, Plaintiff and Appellee,**

v.

**Davey Joe WILLIAMS, Defendant and Appellant.**

**No. 20050031–CA.**

Court of Appeals of Utah.

Oct. 13, 2006.

---

Joan C. Watt and Isaac McDougall, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, Marian Decker, Assistant Attorney General, and Brent M. Johnson, Salt Lake City, for Appellee.

Before Judges GREENWOOD, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶1 Davey Joe Williams pleaded guilty to two class A misdemeanor counts of attempted illegal possession or use of a controlled substance. *See* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2006). Williams appeals his sentence for those offenses, as well as two [1] findings of contempt of court entered against him at sentencing. We affirm Williams's sentence but vacate the findings of contempt.

## BACKGROUND

¶2 On November 12, 2004, Williams pleaded guilty to two counts of attempted drug possession and the State dismissed several lesser counts. Upon hearing this proposed disposition, the trial court commented that it was a "[p]retty good plea deal" and asked the prosecutor "to explain why he's getting such a great deal."

¶3 The prosecutor explained that Williams had already been committed to prison on a separate conviction and that the State's rec-

---

1. There is some dispute as to whether this case involves a single contempt finding or two separate contempt findings. The number of findings is not relevant given our disposition of the matter, and for purposes of this opinion we will refer to two contempt findings.

ommendation was that any sentences of incarceration resulting from the guilty pleas should be served concurrent to each other, and concurrent to Williams's ongoing term of incarceration. The court commented that such an arrangement "arrives at naught. He's not going to do any extra time, he's not going to be punished in any way[.]" The prosecutor responded that, even with concurrent sentences, the Board of Pardons would require about four additional months of incarceration on each class A misdemeanor.

¶ 4 The trial court proceeded to take Williams's pleas. After advising Williams of his constitutional rights, the court stated:

Oh, one more thing. These counts can run concurrent or consecutive with one another, that is at the same time, for no more than a year in jail, or consecutive to one another, for two years in jail. They can also run concurrent or consecutive to the term you're doing; do you understand that?

Williams responded affirmatively. The court then asked Williams if anyone had made him any promises "with reference to that," and Williams said no.

¶ 5 Williams entered his pleas and elected to be sentenced immediately. The prosecutor apprised the court of Williams's extensive history of arrests, charges, and convictions dating back to 1977 and continuing through the drug possession conviction for which Williams was already incarcerated. When the trial court expressed some lack of memory of its previous sentencing of Williams to prison on the prior drug possession conviction, the prosecutor explained that the court "w[as] considering sending him to Odyssey House [treatment facility], but Mr. Williams declined that offer." The court commented, "Oh, that would mean no drugs."

¶ 6 The trial court asked Williams if he had anything to add to this account, and Williams replied, "I think you know what I did and everything is done (inaudible) and I did not decline the Odyssey House." Williams further explained that the court had "asked if I could do the Odyssey House and being honest with you, I told you that I would do my best, you told me that wasn't good enough." The court responded that it had only been

looking for a commitment that Williams would complete the program, and Williams again stated that he could not commit to that.

¶ 7 The trial court sentenced Williams to 365 days of incarceration on each count, commenting "I hope you will take advantage, sir, of the opportunity to get some drug treatment while in prison." The court ordered the sentences to run consecutively to each other and to Williams's existing term of imprisonment. When this was explained to Williams, the following exchange occurred:

MR. WILLIAMS: Damn, that was kind of harsh, wouldn't you say?

THE COURT: I think, sir, that you haven't learned from experience and you have a very long record, but I wish you the best of life.

MR. WILLIAMS: What does that have to do with it?

THE COURT: That has everything to do with it. Thank you.

As Williams was being led from the courtroom immediately thereafter, he made a comment that the record transcribes as "inaudible."

¶ 8 Williams's comment was apparently audible to the trial court, which summoned Williams back into the courtroom. The following exchange then occurred:

MR. WILLIAMS: What?

THE COURT: Don't speak to me in that manner.

MR. WILLIAMS: Well, you speak to me all foul.

THE COURT: All right. I did not speak to you foul.

MR. WILLIAMS: Yes. You did.

THE COURT: I've treated you with respect.

MR. WILLIAMS: You already—you already sentenced me to prison on a zero to five.

THE COURT: And you know—

MR. WILLIAMS: You wouldn't let me go to the Odyssey House and get drug help—

THE COURT: Wait.

MR. WILLIAMS:—and then you're going to tell me that you hope that I get some

drug help. What [sic] didn't you give it to me when I asked you for it? I've been doing drugs since I was 15 years old. I asked you for help, you turned me down.

THE COURT: I—no, I did not.

MR. WILLIAMS: But then you want to give me a consecutive charge—

THE COURT: Don't speak to me any further.

MR. WILLIAMS: Well, how would you like for me to speak to you?

THE COURT: With respect, as I have spoken to you.

MR. WILLIAMS: I'm trying to speak with you with respect, you ain't respecting me.

THE COURT: I heard what you said as you walked through the door—

MR. WILLIAMS: Yes, you did.

THE COURT:—and you are now given thirty days for contempt—

MR. WILLIAMS: Yeah.

THE COURT:—before you're transported back to prison.

MR. WILLIAMS: Uh huh.

THE COURT: And I'd watch what you say from here on out or there'll be more contempt days.

MR. WILLIAMS: Yeah.

THE COURT: Thank you.

MR. WILLIAMS: That's bullshit.

THE COURT: I beg your pardon?

MR. WILLIAMS: I said that's bullshit.

THE COURT: Sixty days of contempt in the Salt Lake or Metropolitan Adult Detention center.

This reaffirms the correctness of the decision.

The transcript ends at this point, indicating that the hearing was concluded.

¶ 9 The trial court entered a written judgment reaffirming the consecutive nature of Williams's prison terms. The written judgment also stated: "The court finds the defendant in contempt and orders 60 days to be served at the Salt Lake County jail prior to the sentence being served on this case." Williams appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 Williams argues that the findings of contempt must be vacated because the trial court failed to follow the proper procedure for imposing contempt, his behavior did not warrant contempt findings, and the period of incarceration imposed for the contempt exceeded the statutory maximum. " 'The correct interpretation of a statute is a question of law and is reviewed for correctness.' " *State v. Pixton*, 2004 UT App 275, ¶ 4, 98 P.3d 433 (quoting *State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993)).

■ ¶ 11 Williams also argues that the trial court failed to consider all legally relevant factors when it imposed consecutive sentences. We review a trial judge's sentencing decisions for abuse of discretion. *See State v. Thorkelson*, 2004 UT App 9, ¶ 12, 84 P.3d 854. "An abuse of discretion results when the judge fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167 (quotations and citation omitted).

## ANALYSIS

### I. Contempt of Court

■ ¶ 12 Williams challenges the trial court's findings of contempt and the resulting imposition of sixty days jail time. We vacate the contempt findings because the trial court failed to make findings of fact establishing Williams's contemptuous behavior, and adequate justification for the contempt findings cannot be gleaned from the bare record before us.

¶ 13 Utah Code section 78–32–1 identifies multiple acts and omissions constituting contempt of court. *See* Utah Code Ann. § 78–32–1 (2002). The definition most applicable to the facts of this case is "[d]isorderly, contemptuous or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding." *Id.* § 78–32–1(1). This form of contempt constitutes direct contempt, i.e., contempt committed in the immediate view and presence of the judge, and "may be punished summarily." *Id.* § 78–32–

3 (2002). The penalty for contempt may include "a fine not exceeding $1,000, ... incarcerat[ion] in the county jail not exceeding 30 days, or both." *Id.* § 78–32–10 (2002).

¶ 14 A court's authority to impose contempt sanctions is not without limit. Indeed, every use of the contempt power, whether direct or indirect, "is subject to constitutional and statutory restraints regarding the process due to any person so accused." *Crank v. Utah Judicial Council,* 2001 UT 8, ¶ 25, 20 P.3d 307. Utah's contempt statutes represent a legislative attempt "to implement this mandate" of due process protection, *id.* at ¶ 26, and the procedural requirements of those statutes are a "prerequisite to the imposition of any sanctions," *id.* at ¶ 28.

¶ 15 Utah Code section 78–32–3, governing direct contempt, states, in part:

When a contempt is committed in the immediate view and presence of the court, or judge at chambers, it may be punished summarily, for which an order must be made, *reciting the facts* as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as prescribed in [Utah Code section 78–32–10].

Utah Code Ann. § 78–32–3 (emphasis added). Here, the trial court failed to make factual findings setting out the basis for contempt sanctions against Williams. Because such findings are a "prerequisite to the imposition of any sanctions," *Crank,* 2001 UT 8 at ¶ 28, 20 P.3d 307, we must vacate the trial court's finding that Williams was in contempt.

¶ 16 The Administrative Office of the Courts (AOC), representing the trial court on appeal, argues that justification for the contempt findings is apparent on the record, and that the record clearly reveals two separate incidents of contempt. Although the record only records Williams's parting comment to the trial court as "inaudible," the AOC relies on Williams's subsequent explanation that the court was speaking to him "all foul" to

infer that Williams's comment to the court was itself contemptuous. *Cf. Weaver v. Superior Court,* 572 P.2d 425, 429 (Alaska 1977) (recognizing that no warning to a contemnor is necessary when contempt is "flagrant"). The AOC also argues that Williams's use of the term "bullshit" justifies a separate contempt finding, particularly in light of the warning provided by the initial contempt citation.

¶ 17 Assuming, without deciding, that certain forms of contempt are so self-evident that they excuse a court from complying with the plain terms of the statute, we disagree that the record before us presents such circumstances. Regarding the trial court's initial contempt finding, we decline the AOC's invitation to speculate that Williams's "inaudible" comment to the court was contemptuous on its face.[2] Williams's comment may have been a patent obscenity, or an innocuous comment taken out of context by the court, or anything in between. Further, the trial court's failure to make findings deprives us of any other relevant circumstances not apparent in the bare transcript. Such circumstances might include Williams's body language, gestures, or even a general air of defiance. While these circumstances, when combined with Williams's actual comment, may well have supported a contempt citation, we cannot uphold the contempt finding based on mere conjecture. Therefore, we conclude that the first finding of contempt is insupportable on the facts present in the record.

¶ 18 Whether Williams's use of the term "bullshit" independently supports a contempt finding presents a closer question. The record reveals that Williams used that term to describe either the sentence the trial court had just imposed or the trial court's initial contempt citation. More troubling, however, than the language itself is the apparent challenge to the court's authority and decorum. *See* Utah Code Ann. § 78–32–1(1) (defining contempt as, inter alia, "[d]isorderly, contemptuous or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other

---

**2.** Our refusal to speculate on the exact nature of Williams's comment is motivated, in part, by the ease with which the trial court could have placed Williams's comment into the record had it complied with its statutory obligation. *See* Utah Code Ann. § 78–32–3.

judicial proceeding"); *see also Eaton v. Tulsa*, 415 U.S. 697, 698, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974) ("[A] single isolated usage of street vernacular, *not directed at the judge or any officer of the court,* cannot constitutionally support the conviction of criminal contempt." (emphasis added)). Looking at the totality of the circumstances, however, we again conclude that the trial court's failure to make factual findings as required by statute precludes a contempt citation.

¶ 19 Although the content of Williams's second comment is clear, the relevant surrounding circumstances are again absent from the record. Williams's epithet could have been a loud and defiant outburst, but it might have been merely muttered under Williams's breath as the gravity of his sentences sank in. Depending on the circumstances, the comment could have had the effect of disrupting the proceedings. But it might also have been an inartful, yet sincere, expression of shock and disbelief in response to either the consecutive sentences or the preceding contempt citation and punishment.[3] As such, it may have been uttered merely as a vernacular synonym for "This is wrong!", meant to be heard by no one and repeated only at the express request of the trial court.

¶ 20 We can also say with confidence that Williams's comment might have been considerably more vulgar, and more focused as a direct insult to the trial court judge, had that been his intent. With only a bare, written transcript before us, we are left to speculate whether Williams's comment, which was not inherently obscene or insulting, was in fact "disorderly, contemptuous or insolent." Utah Code Ann. § 78–32–1(1). It certainly may have been, but we are not permitted to assume that it was.

¶ 21 Section 78–32–1(1) further requires that behavior must "tend[ ] to interrupt the due course of a trial or other judicial proceeding" in order to support a contempt finding. *Id.* Without knowing the details behind the trial court's decision to summon Williams

back into the courtroom and confront him, or the tone, volume, facial expressions, hand gestures, etc., attendant to his subsequent comment, we find it impossible to fairly assess the disruptive effect of Williams's comment. Again, this is not a substantive bar to a contempt finding in this specific instance, but rather a failure of documentation by the trial court.

¶ 22 On this bare record, and without clear factual findings by the trial court, there are simply insufficient facts upon which we can conclude that Williams's epithet was disorderly, contemptuous, or insolent, and that it tended to disrupt the proceeding. *See id.*

¶ 23 The AOC also argues that our reversal of Williams's contempt citation will establish precedent for unhappy criminal defendants to make a final, disrespectful comment to the trial court upon an unfavorable sentence or other ruling. We discount this concern for two reasons. First, criminal defendants are aware that their fate may rest largely in the hands of the trial court, and they should reasonably be loath to anger the court with gratuitous insults. Even after sentencing, various post-trial matters may come before the trial court, and in smaller communities a defendant may expect to come before the same judge on any future violations. Second, and without reliance on the self interest of criminal defendants, our ruling today merely requires trial courts to justify direct contempt citations with the statutorily mandated recital of facts justifying their decision. *See id.* § 78–32–3. Had the trial court done so in this case, today's result might have been different.

¶ 24 In sum, the trial court failed to enter the statutorily required factual findings necessary to support the contempt sanctions against Williams. The bare transcript does not indicate the content of Williams's initial comment to the trial court, nor does it provide any details of tone, volume, body language, or other factors that might have rendered either Williams's inaudible comment or his subsequent epithet contemptuous. Without factual findings and with no record evi-

---

**3.** And, as we have determined, we have no way of knowing whether the first citation was itself justified.

dence to support the trial court's actions, we must vacate the contempt finding against Williams as unsupported.[4]

¶ 25 Ordinarily, a trial court's failure to make required factual findings will result in a remand to the trial court for the entry of such findings. *See, e.g., Keene v. Bonser*, 2005 UT App 37, ¶ 19, 107 P.3d 693 ("Unless the record clearly and uncontrovertedly supports the trial court's decision, the absence of adequate findings of fact ordinarily requires remand for more detailed findings by the trial court." (quotations and citations omitted)). We determine, however, that remand is not appropriate when, as here, a trial court fails to support a direct contempt order by making the contemporaneous fact findings mandated by statute. *See* Utah Code Ann. § 78–32–3.

¶ 26 Punishment for direct contempt is, by the plain terms of section 78–32–3, summary punishment. *See id.* ("When a contempt is committed in the immediate view and presence of the court, or judge at chambers, it may be *punished summarily ....*" (emphasis added)). A trial court's obligation to make factual findings in support of a direct contempt citation is clear and unequivocal. *See id.* (stating that "an order *must* be made, reciting the facts as occurring in [the court's] immediate view and presence" (emphasis added)). The summary nature of a direct contempt charge, combined with the strong, mandatory requirement of factual findings, leads us to conclude that contemporaneous fact findings are generally a condition precedent to punishment for direct contempt under section 78–32–3.

¶ 27 One who is to be punished for direct contempt is entitled to an order setting out "the facts as occurring in [the trial court's] immediate view and presence" that justify the contempt. *Id.* We do not read section 78–32–3 as contemplating that those factual findings may be made months or years after the event, relying on a court's recollection rather than its present observation. Thus, we determine that the factual grounds for a direct contempt citation must either be set out in contemporaneous fact findings or apparent on the record, and that a citation that is unsupported by either of these bases must be vacated without a remand for post hoc justification by the trial court.[5]

## II. Consecutive Sentencing

¶ 28 Williams also challenges his consecutive sentences, arguing that the trial court failed to consider all legally relevant factors in imposing consecutive sentences: "In determining whether state offenses are to run concurrently or consecutively, the court shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." Utah Code Ann. § 76–3–401(2) (2003). Such a failure may be deemed an abuse of discretion, *see State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167, but Williams has not demonstrated that the trial court improperly failed to consider the relevant factors in this case.[6]

¶ 29 We initially note that, according to Williams's appellate brief, no presentence report was prepared in this matter because Williams waived the minimum time for sen-

---

**4.** Because we vacate each individual contempt citation, we need not address Williams's argument that his conduct constituted, at most, a single act of contempt and that the penalty imposed exceeded the statutory maximum. *See* Utah Code Ann. § 78–32–10.

**5.** Although Utah courts have not previously addressed this issue directly, our determination is consistent with prior caselaw addressing the requirement of fact findings to support contempt citations. *See Von Hake v. Thomas*, 759 P.2d 1162, 1173 (Utah 1988) (reversing indirect civil contempt order for lack of findings without remand for additional findings); *Brown v. Cook*, 123 Utah 505, 260 P.2d 544, 549 (1953) (re-

manding direct contempt issue for entry of written factual findings pursuant to Utah Code Ann. § 78–32–3, but only where trial court made detailed oral findings contemporaneous with contempt citation).

**6.** The State challenges Williams's preservation of this issue below. We deem the issue sufficiently preserved, albeit marginally so, in light of defense counsel's assertion that he had questions about the consecutive nature of Williams's sentences; the resulting three-way colloquy between the court, counsel, and Williams; and Williams's resulting complaint that the sentence was "kind of harsh."

tencing and elected to be sentenced immediately after his plea. Williams attempts to distinguish this case from *State v. Helms*, 2002 UT 12, 40 P.3d 626, in which the trial court's consideration of a detailed presentence report satisfied its obligation to consider the statutory sentencing factors. *See id.* at ¶ 13. To the extent that the lack of a presentence report is due to Williams's waiver, we will not fault the trial court for failing to consider such a report. We also note that, prior to announcing sentence, the trial court expressly asked Williams, "[i]s there anything else you'd like to say, sir?" *See* Utah Code Ann. § 77–18–1(7) (Supp.2006) ("At the time of sentence, the court shall receive any testimony, evidence, or information the defendant ... desires to present concerning the appropriate sentence."). Williams responded that there was not.

¶ 30 Turning to the record of the sentencing hearing, we determine that it "contains evidence to suggest that the trial court did consider all of the factors." *Helms*, 2002 UT 12 at ¶ 13, 40 P.3d 626. At the beginning of the sentencing hearing, the trial court expressed its concern that the gravity of Williams's alleged actions was not adequately reflected in his plea bargain. Williams was charged with two felonies for possessing two different controlled substances, as well as three misdemeanor charges for possessing drug paraphernalia, carrying a concealed weapon, and giving false identifying information to police. The trial court characterized the reduction of these charges to two misdemeanor attempted drug possession charges as a "[p]retty good plea deal." The court also heard Williams's description of the circumstances of his crime and arrest. Thus, we conclude that the court considered the gravity and circumstances of Williams's crimes.

¶ 31 The trial court did not expressly address the number of victims of Williams's crimes, but it is clear from the sentencing colloquy that the court was aware that these were so-called victimless crimes. To the ex-

tent that the lack of identifiable victims constitutes a mitigating factor in these circumstances, it is clear that the court weighed this factor less heavily than others, such as Williams's criminal history and rehabilitation prospects. This constitutes a proper exercise of discretion on the part of the trial court. *See State v. Russell*, 791 P.2d 188, 192 (Utah 1990) ("One factor in mitigation or aggravation may weigh more than several factors on the opposite scale.").

¶ 32 The trial court also heard and considered Williams's extensive history of arrests and convictions, including a drug possession offense with a disposition date less than two months prior to the date of his present offenses. The trial court seemed particularly concerned by what it perceived to be Williams's lack of commitment to addressing his drug problem. This concern apparently arose, in part, from Williams's unwillingness to commit to completing inpatient treatment.[7] The trial court expressly urged Williams to take advantage of drug treatment opportunities over the course of his consecutive terms of incarceration.

¶ 33 The record reveals that the trial court considered the relevant statutory factors before sentencing Williams to consecutive terms. Accordingly, the trial court did not exceed the bounds of its discretion and we will not disturb its sentencing order. *See State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167.

## CONCLUSION

¶ 34 The trial court did not enter factual findings in support of its contempt citations, and those citations are not clearly supported by the record. Accordingly, we vacate the findings of contempt against Williams. The trial court did not, however, abuse its discretion in sentencing Williams to consecutive terms of incarceration, and we affirm Williams's sentence in that regard.

---

7. Williams complains that he was, in essence, penalized for being honest with the court. For purposes of this analysis, we do not look at whether the trial court drew the correct inference from Williams's statement, but rather whether the trial court considered all of the necessary factors. Although Williams disagrees with the court's assessment of his amenability to treatment, the court clearly considered Williams's character in that regard.

¶ 35 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and GREGORY K. ORME, Judge.