2018 UT App 220

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
VICTORIA ASTA,
Appellant.

Opinion
No. 20160942-CA
Filed November 29, 2018

First District Court, Logan Department
The Honorable Brian G. Cannell
The Honorable Thomas L. Willmore
No. 151100933

Ashley E. Bown, Attorney for Appellant

Sean D. Reyes and Jeanne B. Inouye,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and MICHELE M. CHRISTIANSEN FORSTER
concurred.

HARRIS, Judge:

¶1     After Victoria Asta pled no contest to charges of burglary and assault against a police officer, the district court sentenced her to prison. Asta now appeals that sentence, asserting that the sentencing judge should have recused himself, and that the court abused its discretion in imposing the sentence. Asta also complains that the court failed to specifically address several of her objections to items contained within the presentence report (PSR). We affirm Asta's sentence, as well as the judge's decision not to recuse himself, but remand for the limited purpose of addressing Asta's objections to items contained within the PSR.

BACKGROUND

¶2     On a November evening in Cache County, Utah, Asta and her boyfriend (Boyfriend) were out for a drive, with Asta behind the wheel. Boyfriend was wearing a "green tactical shirt" and a shoulder holster and had two handguns with him. At some point, Boyfriend exited the vehicle on foot, donned a ski mask, and broke into a house occupied by an elderly couple. When the husband confronted Boyfriend, Boyfriend pointed his gun at him and ordered him into the basement where his wife was watching television. As the owners were calling 911, Boyfriend helped himself to jewelry and other items from the house, and then fled the scene.

¶3     After completing the burglary, Boyfriend got back in the car that Asta was driving. As they drove away from the scene, they passed a sheriff's deputy who was responding to the owners' 911 call. The deputy activated his overhead lights and attempted to stop Asta's vehicle, but Boyfriend told her to "just keep driving, don't stop," and Asta kept driving. As Asta drove past the deputy, she and Boyfriend tried to hide their faces. The deputy turned to pursue them, and a lengthy and dangerous car chase ensued, one that eventually involved speeds of up to 90 mph in and out of traffic on public roads, as well as detours across open fields.

¶4     The deputy called for assistance, and another officer (Officer) eventually initiated a Pursuit Intervention Technique (PIT) maneuver designed to force the fleeing car to turn sideways and stop. The maneuver worked, and caused Asta's vehicle to spin and come to a stop facing the direction it had been traveling. Officer then pulled his vehicle in front of Asta's in an attempt to box it in, but Asta again refused to stop, this time driving her vehicle forward and causing it to collide with Officer's, then scraping past Officer's vehicle and eventually escaping. Officer later described the encounter as one in which Asta "rammed" his vehicle.

¶5    A second high-speed car chase then ensued. Officers attempted another PIT maneuver, this time unsuccessfully. Eventually another officer used his patrol vehicle to push Asta's vehicle off of the roadway, where Asta's vehicle finally came to a stop only because it struck a tree.

¶6    Officers then arrested Asta and Boyfriend. Inside the vehicle, officers found two handguns and a ski mask, among other items. Initially, neither Asta nor Boyfriend would give officers their physical address, and officers at first concluded that they were homeless. But officers eventually discovered where they lived and searched their residence, finding stolen jewelry and drug paraphernalia.

¶7    In relation to her activities on the night in question, the State charged Asta with aggravated robbery and aggravated burglary, both first-degree felonies; assault against a police officer, a second-degree felony; and four additional counts. The State also charged Asta with seventeen other burglary- and theft-related crimes alleged to have occurred before the November incident. These other charges were later dismissed pursuant to an agreement Asta made with the State to "meet with investigators and provide truthful information related to the State's prosecution of [Boyfriend]." Eventually, with regard to the charges stemming from her activities on the night in question, Asta agreed to plead "no contest" to two second-degree felonies: burglary, amended to a second-degree felony, and assault against a police officer. In exchange, the State agreed to drop all remaining charges.

¶8    After Asta entered her plea, Adult Probation and Parole (AP&P) prepared the PSR, and therein recommended that Asta be sentenced to prison. AP&P acknowledged that the applicable sentencing guideline matrix pointed to probation, rather than prison, as the presumptive sentence for someone in Asta's position. However, AP&P nevertheless recommended prison due to certain "aggravating factors," including Asta's perceived "criminal mentality," "lack of remorse," and "refus[al] to

cooperate with law enforcement," as well as the fact that the underlying crime included "ramm[ing] an occupied police car."

¶9   The PSR included a statement from Asta, in which she maintained that she did not know that Boyfriend intended to commit burglary when he exited the vehicle on the evening in question. Indeed, Asta stated that she and Boyfriend were "just driving around and exploring random dirt roads and just enjoying a little quiet time together," and that Boyfriend got out of the car because he said he "had to go to the bathroom." While he was doing so, Asta stated that she "told him [she] was going to drive ahead for a bit and see if [she] could find a gas station" where she could purchase snacks. She claimed Boyfriend was "acting strangely" after she picked him back up, and that she fled from police at Boyfriend's urging.

¶10   The day before the sentencing hearing, Asta filed a lengthy written objection to the PSR, arguing that AP&P's recommendation was unwise and "entirely subjective." Asta specifically took issue with AP&P's conclusion that she had failed to show remorse or to take responsibility for her crimes, pointing to her lengthy statement, included in the PSR, in which she apologized and expressed regret.

¶11   At the sentencing hearing, Asta's counsel addressed, at some length, Asta's objections to the report, and made impassioned argument that Asta should be sentenced to probation rather than prison. In addition to argument from counsel, Asta herself provided a statement to the court, as did Asta's mother. On the other side of the ledger, the court also heard from one of the victims of the burglary, and from Officer, who described for the court in person how Asta "rammed" his vehicle while he was inside it. The court also thoroughly questioned an AP&P supervisor about AP&P's recommendation for a prison sentence. The State also argued, among other things, that Asta's claims about what happened that night were false, and that she had to have known what Boyfriend intended to do. In the course of making this argument, the prosecutor

mentioned that she did not "believe [the police] found any snacks in the car that she claimed she was going after."

¶12    At the conclusion of the sentencing hearing, the court sentenced Asta to prison on each count, with the sentences to run concurrently. In imposing the sentence, the court stated that it considered Asta's crimes "heinous," and stated its belief that, at least "as it relates to [her] relationship with Boyfriend and the events" in question, Asta had been acting in a "morally bankrupt" manner. The court also stated that it did not credit Asta's explanation that she did not know that Boyfriend was going to commit burglary when he exited the car that night, and stated that it was especially concerned with the danger she had imposed on the members of the community by leading officers on two high-speed car chases. The court also expressed its concern that the crime included the "intentional act of ramming [Officer's] vehicle as described here today."

¶13    Shortly after sentencing, Asta's counsel learned that the sentencing judge had himself been the victim of a home burglary in 2014, the year before the events in question. Asta filed a motion to disqualify, arguing that the burglary biased the judge and that the judge should have recused himself. The motion was referred to the presiding judge, who denied it.

ISSUES AND STANDARDS OF REVIEW

¶14    Asta appeals, and raises three issues for our review. First, Asta asserts that the sentencing judge was obligated to recuse himself because he had been the victim of a home burglary in the year before Asta's crimes, and that the reviewing judge erroneously denied her motion to disqualify the sentencing judge. "Determining whether a trial judge committed error by failing to recuse himself or herself under the Utah Code of Judicial Conduct is a question of law," which we ordinarily review for correctness. *State v. Van Huizen*, 2017 UT App 30, ¶ 11, 392 P.3d 933 (quotation simplified), *cert. granted*, 400 P.3d 1044 (Utah 2017). However, if the trial judge "complie[s] exactly with

rule 29" of the Utah Rules of Criminal Procedure in handling the motion for disqualification, then the "burden shift[s] to the petitioners" to make an additional showing of either "actual bias or abuse of discretion." *State v. Alonzo*, 973 P.2d 975, 979 (Utah 1998) (quotation simplified). Additionally, at least in cases in which rule 29 was invoked and followed, *see Van Huizen*, 2017 UT App 30, ¶¶ 55–63, "any error of the trial judge in failing to recuse" must be disregarded absent a showing of "actual prejudice," *see State v. Gardner*, 789 P.2d 273, 278 (Utah 1989); *see also* Utah R. Crim. P. 30(b) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded").

¶15     Second, Asta asserts that the sentencing judge did not finally and thoroughly deal with all of her objections to the PSR. "Whether the trial court properly complied with a legal duty to resolve on the record the accuracy of contested information in sentencing reports is a question of law that we review for correctness." *State v. Samulski*, 2016 UT App 226, ¶ 9, 387 P.3d 595 (quotation simplified).

¶16     Third, Asta asserts that the sentencing judge abused its discretion by considering irrelevant or unreliable information and by sentencing her to prison rather than probation. "Because trial courts are afforded wide latitude in sentencing, a court's sentencing decision is reviewed for an abuse of discretion. A court exceeds its discretion if it acts with inherent unfairness in imposing a sentence, imposes a clearly excessive sentence, or fails to consider all legally relevant factors." *State v. Neilson*, 2017 UT App 7, ¶ 15, 391 P.3d 398 (quotation simplified).[1]

---

1. After Asta's brief was filed, the State filed a motion to strike certain exhibits attached to Asta's brief on the ground that those exhibits were not part of the record. We granted that motion. Asta then sought several extensions of time within which to file a reply brief, but never did file one. Instead, after the State's brief

(continued…)

ANALYSIS

I

¶17 First, Asta argues that the sentencing judge was obligated to recuse himself because he had been the victim of a residential burglary in 2014, the year prior to the events at issue here. The sentencing judge declined to grant the motion, and instead referred it to the presiding judge, who eventually denied it. We affirm that decision.

¶18 "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably

---

(…continued)

was filed, Asta filed a motion, grounded in rules 23 and 23B of the Utah Rules of Appellate Procedure, seeking leave to "amend her [opening] Brief to include a claim for ineffective assistance of counsel" (IAC), and for an order remanding the case to the trial court for additional fact-finding on a potential IAC claim. In her opening brief, Asta spent less than a page arguing, in the alternative, that her trial counsel had been ineffective; we perceive her post-brief motion seeking leave to state an IAC claim as an acknowledgment that any IAC claim contained in the opening brief was inadequately briefed. Asta's motion for leave to bring that claim for the first time now is essentially a request to re-start the briefing in this case, and we decline Asta's invitation to do so. It is a well-established rule that any claims not raised in the opening brief are waived. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 (stating that "issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court" (quotation simplified)). No additional briefing may be had "except with leave of the appellate court," *see* Utah R. App. P. 24(c), and we decline to exercise our discretion to allow amendment here. Accordingly, we deny Asta's motion for leave to amend and for remand.

be questioned." Utah Code Jud. Conduct R. 2.11. "[W]hen a judge knows of circumstances that give rise to the reasonable appearance of bias, the judge is under an affirmative duty either to recuse or to disclose the facts that contribute to an appearance of partiality and allow the parties to decide whether to waive disqualification." *Van Huizen*, 2017 UT App 30, ¶ 18. However, while parties are entitled to an impartial judge, "they are not entitled to a judge whose mind is a clean slate." *Lunt v. Lance*, 2008 UT App 192, ¶ 12, 186 P.3d 978. "The question of a judge's impartiality is determined by viewing the question through the eyes of a reasonable person, knowing all the circumstances." *Fullmer v. Fullmer*, 2015 UT App 60, ¶ 12, 347 P.3d 14 (quotation simplified).

¶19   But even in cases where a judge fails to strictly follow the Code of Judicial Conduct—and we stop well short of determining that any such failure existed in this case—a reversal is not the automatic result. Indeed, our supreme court has ruled that a judge's failure to strictly follow the Code of Judicial Conduct "does not necessarily mean that the defendant is entitled to a new trial," because "[t]he parameters of defendants' constitutional rights to a fair trial are defined by [rule 29 of the Utah Rules of Criminal Procedure] and relevant case law, *not* the Code of Judicial Conduct." *See State v. Neeley*, 748 P.2d 1091, 1094 (Utah 1988). Rule 29 of the Utah Rules of Criminal Procedure sets forth the process that a judge in a criminal case must follow when a litigant seeks the judge's disqualification.[2] A judge who is the target of a motion to disqualify has two options: the judge may grant the motion without further hearing, or the judge may certify the motion to a different judge for decision. *See* Utah R. Crim. P. 29(b)(2)(A) (stating that "[t]he judge against whom the motion and affidavit are directed shall, without further hearing, enter an order granting the motion or certifying the motion and

---

2. Rule 63 of the Utah Rules of Civil Procedure sets forth a nearly identical process that is to be followed in civil cases. *See* Utah R. Civ. P. 63(c).

affidavit to a reviewing judge"). The target judge may not hold a hearing on the motion, and may not herself deny the motion. *Id.* Other than either granting the motion or certifying the motion to another judge, the target judge "shall take no further action in the case until the motion is decided." *Id.*

¶20    If these procedures are followed, then a judge's decision not to recuse "does not constitute reversible error" "absent a showing of actual bias or an abuse of discretion." *State v. Alonzo*, 932 P.2d 606, 610–11 (Utah Ct. App. 1997) (quotation simplified), *aff'd*, 973 P.2d 975 (Utah 1998). In this case, Asta makes no argument that either the sentencing or reviewing judge in this case failed to follow the procedures set forth in rule 29. Because those procedures were followed here, Asta bears the heightened burden of demonstrating either actual bias or abuse of discretion. *See Alonzo*, 973 P.2d at 979. Asta makes no effort to demonstrate that the sentencing judge was actually biased, but does argue that the reviewing judge abused his discretion in denying the motion.

¶21    Asta's assertion in this regard is that the reviewing judge failed to perceive the significance of the fact that the sentencing judge had experienced a home burglary, and contends that this experience must necessarily have "created a presumptive question" regarding the judge's impartiality. We, however, agree with the reviewing judge, who determined that Asta "[made] no effort to bridge the logical gap between a superficially similar crime committed against [the sentencing judge] in the past and his impartiality in this case." Asta offers no specifics regarding the burglary suffered by the sentencing judge and, without more, we are unwilling to hold that a reviewing judge abuses his discretion by failing to disqualify a judge who has previously been the victim of a burglary from any burglary case. In certain situations (for instance, if the judge had been a victim of a crime committed by the same person who later stood accused of a similar crime in the judge's court), we might expect a reviewing judge to grant such a motion. But it cannot be that, in all cases involving all crimes, a judge must disqualify herself if she has

previously been the victim of any similar crime. The rule Asta advances is far too broad, and we decline to adopt it. We discern no abuse of discretion in the reviewing judge's decision.

¶22   Next, Asta asserts that she sustained actual prejudice as a result of the sentencing judge's participation in the case, and asks for reversal on that basis. *See Alonzo*, 973 P.2d at 979 (stating that "a trial judge's failure to recuse based on the appearance of bias may be grounds for reversal if actual prejudice is shown" (quotation simplified)). We find Asta's argument unpersuasive.

¶23   First, Asta asserts that the sentencing judge's failure to disclose the fact that he was the recent victim of a home burglary "deprived Asta of the chance to utilize [r]ule 29A of the Utah Rules of Criminal Procedure." That rule, however, only allows for a change of judge as a matter of right if all parties to a case agree. *See* Utah R. Crim. P. 29A(a) (stating that, in a criminal case, "all parties joined in the action may, by unanimous agreement . . . , change the judge assigned to the action"). Asta offers no indication that the State would ever have agreed to a change of judge, even if Asta had learned of the judge's situation earlier. Accordingly, Asta would not have been able to avail herself of rule 29A in any event.

¶24   Second, Asta asserts that the judge's failure to disclose "deprived Asta of the opportunity to appropriately prepare for her sentencing hearing and present information to the court concerning an appropriate sentence." But the sentencing hearing in this case was quite thorough, and Asta gives no indication of the sort of information she might have presented to the court had she learned earlier of the judge's situation.

¶25   For all of these reasons, Asta has failed to persuade us that reversal is appropriate on the disqualification issue. Accordingly, we find no reversible error in the sentencing judge's decision not to recuse himself, and we affirm the reviewing judge's denial of the motion to disqualify.

II

¶26   Next, Asta challenges both the merits of her sentence, as well as the manner in which the district court addressed the objections she raised at sentencing to specific items in the PSR. We agree with Asta that the district court failed to make specific findings regarding most of her objections to items contained in the PSR, and we remand this case to the district court for the limited purpose of affording the district court another opportunity to do so. However, despite the district court's failure to make specific findings on all of the objections raised, we see no abuse of discretion in the ultimate sentence imposed, and therefore affirm Asta's sentence.

A

¶27   Under Utah law, when a defendant raises specific objections to items contained within a PSR, a district court must examine those objections and "shall make a determination of relevance and accuracy on the record." Utah Code Ann. § 77-18-1(6)(a) (LexisNexis Supp. 2018).[3] In particular, this court has stated that

> once a defendant alleges factual inaccuracies in a [PSR], the district court *must* do three things: first, consider the objection raised; second, make findings on the record regarding the accuracy of the information at issue; and third, determine on the record the relevance of that information as it relates to sentencing.

---

3. Utah Code sections 77-18-1, 76-5-102, and 76-5-102.4, *see supra* ¶ 39, have been amended since Asta was sentenced in 2016. Because the pertinent text of the statutes has not changed, we cite to the current version of the statute for convenience.

*State v. Monroe*, 2015 UT App 48, ¶ 6, 345 P.3d 755. This is important even if the alleged inaccuracies in the report do not turn out to be relevant to the sentence imposed, because "the [PSR] will follow [the defendant] through the justice system," *id.* ¶ 10, and things that appear irrelevant at sentencing might become relevant years later at a parole hearing.

¶28  In this case, there is no doubt that Asta made objections to the PSR. Indeed, Asta filed a ten-page written document the day before the sentencing hearing in which she set forth certain objections to the contents of the PSR, and then at the sentencing hearing Asta emphasized many of those objections. Those objections generally fell into two categories. First, Asta pointed out a few minor factual inaccuracies in the PSR, including her age and her precise plea in both this case as well as the other dismissed cases. Second, and more substantively, Asta took issue with the PSR's ultimate recommendation that Asta be sent to prison, as well as the specific basis for that recommendation. Asta asserted that AP&P's contention that certain aggravating circumstances were present was simply wrong, and raised specific challenges to AP&P's conclusion that Asta had "no remorse," "blames co-defendant," "refused to cooperate with law enforcement," and had "rammed" Officer's vehicle.

¶29  There is also no doubt that these objections were discussed at great length during the sentencing hearing, and that the district court heard extensive argument from both sides on all of these issues, and considered each of these objections in the context of imposing sentence. Both Officer as well as an AP&P supervisor personally addressed the court, gave a statement, and answered questions; Officer spoke directly to the issue of whether Asta "rammed" his vehicle, and the AP&P supervisor provided AP&P's perspective on the aggravating circumstances. In addition, Asta's attorney made an impassioned argument on all of the issues raised, and the court heard directly from both Asta as well as her mother.

¶30    However, at no point did the court pause to make specific rulings or findings on most of the objections raised. Implicit in the court's remarks, as it imposed sentence upon Asta, were rulings on some of the objections. For instance, the court found that Asta had in fact committed an "intentional act of ramming [Officer's] vehicle" on the night in question, and stated that it did not believe Asta's claim that she was unaware that Boyfriend was going to commit burglary when he exited the vehicle. But the court did not make a finding on Asta's age or the form of her plea, and made no finding on whether Asta had shown remorse or whether she had refused to cooperate with law enforcement. We recognize that, to some extent, some of these issues are argumentative rather than strictly factual. However, in previous cases, Utah appellate courts have required district courts to make specific rulings and findings on issues such as whether a victim was "particularly vulnerable" and whether her injuries were "unusually extensive," *see State v. Jaeger*, 1999 UT 1, ¶ 42, 973 P.2d 404, and whether AP&P's assessment of a defendant's "attitude and lack of remorse" was accurate, *see State v. Irey*, 2017 UT App 178, ¶ 4, 405 P.3d 876 (per curiam).

¶31    When objections like these are raised, the district court must do three things: consider the objections, make findings on the record regarding their accuracy, and determine on the record the relevance of that information as it relates to sentencing. *See Monroe*, 2015 UT App 48, ¶ 6; *see also* Utah Code Ann. § 77-18-1(6)(a). In this case, although the district court did consider Asta's objections and weigh those objections in the course of imposing sentence, at least with respect to most of the objections the district court did not ever take the second of the three prescribed steps: it did not make any actual findings about the accuracy of the objections. Accordingly, we must remand the case so that the district court can make those specific findings, because even if those findings did not make a difference to the court's sentencing decision, they may become relevant to Asta at some point in the future, during (for instance) proceedings before the Board of Pardons and Parole.

¶32 It does not follow from the district court's failure to make findings on each specific objection, however, that the sentence imposed is subject to reversal. In several instances, Utah appellate courts have affirmed a defendant's sentence while remanding the case for the limited purpose of having the district court make findings on specific objections to the PSR. *See, e.g., Jaeger*, 1999 UT 1, ¶ 45; *Irey*, 2017 UT App 178, ¶ 6; *Monroe*, 2015 UT App 48, ¶¶ 8–9.

¶33 In some of those cases, even though the defendant's objections "were not adequately resolved on the record," it was nevertheless clear that "the district court properly considered the objections before it sentenced [the defendant]." *See Irey*, 2017 UT App 178, ¶ 6. In this case, as noted above, Asta's objections to the PSR were discussed at great length at the sentencing hearing. After considering Asta's objections, as well as input from the State and from AP&P, the court sentenced Asta to prison, and cited three reasons for departing from the sentencing guidelines: that it believed Asta knew what Boyfriend was doing that evening; the risk Asta's high-speed flight posed to the public; and Asta's intentional act of ramming Officer's vehicle. As noted, the court's discussion of these factors at sentencing contained implicit findings regarding these issues and, as discussed in the next section, the court's reliance on these factors in imposing sentence was entirely appropriate.

¶34 While the court, in imposing sentence, did not specifically address many of Asta's other objections to the PSR, there is no indication in the record that the court placed any particular reliance on the State's or AP&P's position in response to those other objections, or that the court found the subject matter of those other objections particularly relevant to its sentencing inquiry. When "[t]here is no indication in the record that the district court relied on the allegedly inaccurate information at sentencing," there is no basis for reversal and resentencing, even though the court may not have made specific findings on all of the issues raised. *Id.*; *see also State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985 (stating that "an appellate court cannot presume there

is evidence of reliance from a silent record or mere introduction of potentially irrelevant information"); *Monroe*, 2015 UT App 48, ¶¶ 8–9 & n.3 (stating that "[w]e are not convinced that the district court's failure to resolve Defendant's objections requires reversal and resentencing," in part because many of those objections "just did not matter"). Accordingly, in this case, we may affirm the district court's sentencing decision, irrespective of its failure to fully dispose of all of Asta's objections to the PSR, so long as the court's sentencing decision was otherwise proper.

B

¶35　And we find no abuse of discretion in the district court's decision to sentence Asta to prison. Asta makes two arguments to the contrary, neither of which we find persuasive. First, Asta argues that the district court, in imposing sentence, relied upon information that was neither reliable nor relevant. Second, Asta asserts generally that the district court failed to adequately weigh or consider other information that Asta provided, and that the court therefore abused its discretion by sentencing her to prison rather than to probation.

1

¶36　The Utah Constitution "requires that a sentencing judge act on reasonably reliable and relevant information in exercising discretion in fixing a sentence." *State v. Wanosik*, 2001 UT App 241, ¶ 34, 31 P.3d 615 (quotation simplified) (referencing Article 1, Section 7 of the Utah Constitution), *aff'd*, 2003 UT 46, 79 P.3d 937; *see also id.* (stating that it is "a criminal defendant's right to be sentenced based on relevant and reliable information regarding his crime, his background, and the interests of society"). However, a defendant challenging his sentence on the ground that the court improperly considered certain information bears the burden of demonstrating both that the court relied upon the information in question, and that the information "was unreliable or irrelevant." *Moa*, 2012 UT 28, ¶¶ 35–36. Showing evidence

of reliance, "such as a judge's affirmative representation of reliance, is necessary because neither our case law nor our statutes require a district court to make specific findings of fact in a sentencing order." *Id.* (quotation simplified). We will not presume, absent some evidence, that a court actually relied on any particular piece of information. *Id.* And even "[w]hen there is evidence in the record showing a sentencing judge's reliance on specific information, we will not consider it improper for a judge to rely on such information if the evidence in question had indicia of reliability and was relevant in sentencing." *Id.* ¶ 36 (quotation simplified).

¶37 Asta asserts that the district court relied on the following pieces of information that she contends are unreliable or irrelevant: that Asta "rammed" Officer's vehicle; that Asta knew what Boyfriend intended to do when he exited the vehicle on the evening in question; that Asta refused to provide law enforcement with her home address; and that no snacks were found in the vehicle.

¶38 There is no indication in the record, however, that the district court relied upon the last two of those pieces of information; at no point did the district court indicate that it found relevant the issue of whether Asta did or did not provide law enforcement with her home address, or whether any snacks were found inside the vehicle at the conclusion of the car chase. As noted, we will not presume reliance from the "mere introduction of potentially irrelevant information." *Moa*, 2012 UT 28, ¶ 35. Accordingly, Asta has failed to meet her burden with regard to these two pieces of information.

¶39 The court did, however, clearly rely upon the other two pieces of information to which Asta points: that Asta "rammed" Officer's vehicle, and that Asta had to have some knowledge of Boyfriend's burglary plans that evening. We conclude that both of these pieces of information were reasonably reliable and unquestionably relevant.

¶40  With regard to the "ramming," the court heard from Officer and specifically questioned him regarding the incident. Officer provided a personal, firsthand account of the car chase and the PIT maneuver, and expressed to the court his belief that Asta had indeed "rammed" his vehicle. Moreover, it is undisputed that Asta pled "no contest" to second-degree felony assault against a police officer, a violation requiring "an attempt, with unlawful force or violence, to do bodily injury to another," with a "means or force likely to produce death or serious bodily injury." *See* Utah Code Ann. § 76-5-102 (LexisNexis 2017); *id.* § 76-5-102.4(4). Thus, the very nature of the crime to which Asta pled "no contest" requires the inference that Asta intended to forcefully assault a police officer. In our view, whether the contact that occurred between Asta's vehicle and Officer's is best characterized as "ramming," "colliding," or "scraping" is ultimately inconsequential; the district court had before it credible information that Asta intended to assault a police officer, and that she used a car as her weapon of choice. Accordingly, the district court's conclusion that Asta intentionally "rammed" Officer's vehicle was based on reasonably reliable and relevant information.

¶41  Finally, we find nothing improper about the court's conclusion that Asta must have known something of Boyfriend's nefarious plans on the evening in question. Again, Asta pled "no contest" to burglary, which requires intent to commit the crime. Moreover, the State had also dismissed nine other burglary charges against Asta in exchange for information regarding the State's prosecution of Boyfriend, and the sentencing judge in this case had signed the orders dismissing those charges. *See State v. Valdez*, 2017 UT App 185, ¶ 13, 405 P.3d 952 (stating that "we disagree with [the defendant's] specific contention that dismissed or reduced charges are irrelevant or unreliable information regarding the gravity and circumstances of [the defendant's] crime or background"). Furthermore, it was undisputed that Boyfriend was wearing a shoulder holster and had two handguns in his possession. The district court properly relied on this information, which came from reliable sources and

was clearly relevant, in reaching its conclusion that Asta's version of events was not credible.

¶42 Accordingly, because Asta has failed to show that the district court actually relied on any information that was unreliable or irrelevant in reaching its sentencing decision, Asta's first argument fails.

2

¶43 Next, Asta argues that the district court failed to consider other factors and pieces of information, including her lack of prior criminal history, and that the court ultimately abused its discretion in sentencing her to prison rather than suspending her prison sentence and affording her the privilege of probation.

¶44 As noted above, sentencing decisions are generally reviewed for abuse of discretion. *See State v. Neilson*, 2017 UT App 7, ¶ 15, 391 P.3d 398. But "a defendant is not entitled to probation," *see State v. Valdovinos*, 2003 UT App 432, ¶ 23, 82 P.3d 1167 (quotation simplified), and therefore, in particular, "the decision whether to grant probation is within the complete discretion of the trial court," *State v. Hernandez*, 2016 UT App 251, ¶ 9, 391 P.3d 349 (quotation simplified). Indeed, "[t]he granting or withholding of probation involves considering intangibles of character, personality and attitude, of which the cold record gives little inkling" and "must of necessity rest within the discretion of the judge who hears the case." *Valdovinos*, 2003 UT App 432, ¶ 23 (quotation simplified). Accordingly, the decision to grant or deny probation is reviewed for abuse of discretion, which is present only where the court "fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *Id.* ¶ 14 (quotation simplified).

¶45 In this case, Asta asserts that the district court failed to consider several legally relevant factors, including most significantly her lack of prior criminal history, but also her asserted remorse, as well as her claims that she would be unable

to pay restitution if imprisoned, and that her culpability in these crimes should be viewed as far lower than Boyfriend's. But Asta overlooks the fact that the district court had all of that information in front of it, and entertained lengthy argument on all of those topics and more. Although the court did not make specific mention of all of these items in its sentencing decision, there is certainly no indication, in the record, that the district court refused to consider any of the information Asta presented. Under these circumstances, we will presume that the district court did in fact consider the information. *See State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626 (stating that "we will not assume that the trial court's silence, by itself, presupposes that the court did not consider the proper factors as required by law" unless "an ambiguity of facts makes the assumption unreasonable," a statute requires written findings, or "a prior case states that findings on an issue must be made"); *Hernandez*, 2016 UT App 251, ¶ 10 (stating that where "[t]he court was privy to all of [the presentencing] information, and there is no indication that it failed to consider any relevant factor or that it considered any improper factor in making its decision," we will presume that the court considered the proper information).

¶46 Finally, Asta asserts that the district court gave insufficient weight to the sentencing guidelines matrix that pointed, in Asta's case, to probation instead of prison. But "sentencing matrices are advisory and do not create any right or expectation on behalf of the offender." *State v. Monzon*, 2016 UT App 1, ¶ 12, 365 P.3d 1234 (quotation simplified). We cannot say that a court abused its discretion simply because it opted not to follow the sentencing matrix. As noted above, there were aggravating circumstances—most notably that Asta had led police on two separate high-speed car chases through the community, and had intentionally run into a police car in the process—that the district court found persuasive, and it was not an abuse of discretion in this case for the court to decline to follow the sentencing matrix. Indeed, "the fact that the district court assessed the relevant factors differently than a defendant would have liked does not indicate that it exceeded its

discretion." *See State v. Wood*, 2018 UT App 98, ¶ 12, 427 P.3d 452 (quotation simplified).

CONCLUSION

¶47 We find no reversible error in the sentencing judge's actions regarding recusal, or in the reviewing judge's denial of the motion to disqualify. We perceive no abuse of discretion in the district court's decision to sentence Asta to prison, and accordingly affirm Asta's sentence. However, the district court failed to completely resolve all of Asta's objections to items contained within the PSR, and we therefore remand for the limited purpose of entering express findings on those objections.

————————