Memorandum Decision
TOOMEY, Judge:
{ 1 Wilbert Sanchez appeals from the sentence imposed on him by the trial court after he was convicted of unlawful possession of another's identification documents, a class A misdemeanor. We affirm.
{2 Sanchez was charged with one count of identity fraud and one count of forgery based on his alleged use of another person's social security number to obtain employment.[1] A jury later acquitted Sanchez of the identity fraud and forgery charges, instead finding him guilty of a lesser offense of unlawful possession of another's identification document. Sanchez then filed a motion pursuant to Utah Code section 76-8-402(1) to reduce the conviction.: See Utah Code Ann. § 76-8-402(1) (LexisNexis 2012) (providing the trial court discretion to reduce a conviction to the next lower degree of offense if it concludes the conviction would be unduly harsh). Specifically, Sanchez asked the court to reduce his conviction to a class B misdemeanor and sentence him within the corresponding penalty range. See id. § 76-8-204(2) (providing that a class B misdemeanor is punishable by imprisonment for a term not exceeding six months). At the sentencing hearing, the prosecutor asked the trial court to sentence Sanchez to 865 days in jail, the maximum sentence for a class A misdemeanor. See id. § 76-8204(1). Sanchez responded that if the court refused to reduce his conviction and sentenced him to 365 days in jail, he would be deported because of his immigration status. Sanchez therefore urged the trial court to sentence him to 180 days in jail based on his counsel's understanding that such a sentence would give Sanchez a better chance of remaining in the country. °
*703 T3 The trial court judge ultimately denied Sanchez's motion:
[UJnder the cireumstances-I think that I would be substituting my own sympathies for Mr. Sanchez'[s] situation rather than applying the law in an appropriate manner if I were to rule or find that it would be unduly harsh or severe to sentence Mr. Sanchez to the standard sentence for a Class A Misdemeanor.
The trial court thereafter sentenced Sanchez to a term of 365 days in jail. It also imposed a $2,500 fine, stayed the execution of sentence, and placed Sanchez on probation for two years. Among other things, the conditions of Sanchez's probation required him to serve a term of 100 days in the county jail with an early release should he be deported, and an order was entered requiring Sanchez's release to Immigration and Customs Enforcement agents for deportation. Sanchez appeals.
14 On appeal, Sanchez raises three arguments challenging his sentence. Specifically, he argues that the trial court (1) was unduly harsh and abused its discretion when it denied his request for a section 402(1) reduction, (2) abused its discretion when it failed to take into account his potential deportation when determining his sentence, and (8) unlawfully delegated its sentencing decision to the prosecutor.
15 The decision of whether to grant a section 402(1) reduction rests within the discretion of the trial court. See State v. Perea, 2013 UT 68, ¶114, 322 P.3d 624; see also State v. Boyd, 2001 UT 30, ¶¶ 30-31, 25 P.3d 985. We afford trial courts "wide latitude and discretion in sentencing." State v. Killpack, 2008 UT 49, ¶ 58, 191 P.3d 17 (citation and internal quotation marks omitted). Accordingly, "[wle will not overturn a sentence unless it exceeds statutory or constitutional limits, the judge failed to consider all the legally relevant factors, or the actions of the judge were so inherently unfair as to constitute abuse of discretion." State v. Sotolongo, 2003 UT App 214, ¶3, 73 P.3d 991 {citations and internal quotation marks omitted); see also Boyd, 2001 UT 30, ¶31, 25 P.3d 985.
16 First, Sanchez argues the trial court exeeeded its discretion in denying his request for a section 402(1) reduction because a conviction for a class A misdemeanor would be unduly harsh and would subject him to deportation. Section 763-402(1) provides, -
If at the time of sentencing the court, having regard to the nature and cireum-stances of the offense of which the defendant was found guilty and to the history and character of the defendant, and after having given any victims present at the sentencing and the prosecuting attorney an opportunity to be heard, concludes it would be unduly harsh to record the conviction as being for that degree of offense established by statute, the court may enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly.
Utah Code Ann. § 76-3-402(1).
T7 In analyzing Sanchez's motion to reduce his conviction, the trial court considered the nature of his crime, his particular cireumstances, and the consequences of his conviction. Specifically, the court noted that, although he is "a hard worker," Sanchez committed "a serious crime, using someone else's Social Security Number" and had "already substantially benefited by not having been convicted of a felony." Moreover, it considered that there was no guarantee that Sanchez was going to be deported with a class A misdemeanor conviction or a 365-day jail sentence. The trial court judge determined that the conviction for a class A misdemeanor was not unduly harsh to Sanchez, stating,
I don't think that the Section 402 argument is a hard one, Counsel, because given-1I heard the facts of the case, and I just could not find under the cireum-stances-and I've given it a lot [of] thought-that I should reduce it because I can't find that it would be undaly harsh or severe to enter sentence at the level of a standard sentence for a Class A Misdemeanor.
Based on our review of the record, we conclude the trial court acted within its discretion in ruling that the class A misdemeanor *704 conviction was not unduly harsh under the cireumstances of this case.
18 Second, Sanchez contends the trial court should have taken into account his potential deportation when determining his sentence. In essence, Sanchez argues that the immigration consequences resulting from a 865-day jail sentence should have been weighed as a mitigating factor and should have led the trial court to sentence him to a shorter jail term.
19 In general, trial courts base sentencing decisions on "the totality of the cireumstances." Pere, 2013 UT 68, ¶117, 322 P.3d 624. "Although courts must consider all legally relevant factors in making a sentencing decision, not all aggravating and mitigating factors are equally important, and [oJne factor in mitigation or aggravation may weigh more than several factors on the opposite seale." Killpack, 2008 UT 49, ¶59, 191 P.3d 17 (alteration in original) (citation and internal quotation marks omitted).
{[ 10 In this case, the trial court considered the totality of the cireumstances when it made its sentencing decision. In doing so, the court contemplated whether to give weight to Sanchez's potential deportation but concluded that it should sentence Sanchez without regard to the immigration ramifications. Nevertheless, the judge opined that Sanchez's deportation would be "unfortunate," and the judge expressed "sympathies for Mr. Sanchez'[s] situation" and hope for "substantial comprehensive immigration reform that would deal with these situations."
€ 11 Although the trial court evidently entertained the idea of sentencing Sanchez to less than the maximum standard 365-day jail sentence, it explained that the "only reason" to do that would be because the trial court was "not sure that it is fair that Mr. Sanchez be deported.[2] But because doing so would be "making a different kind of sentence for Mr. Sanchez than [the court does] for almost everyone else who's committed a Class A Misdemeanor," the trial court refused to deviate from its normal practice of imposing the maximum standard sentence of 365 days in jail. Under these circumstances, the trial court did not exceed its discretion when it sentenced Sanchez.[3]
112 Finally, Sanchez asserts that the trial court unlawfully delegated its sentencing decision to the prosecutor. Sanchez directs us to a point during the sentencing hearing when the trial judge explained that "99.9 percent of the time," he sentences defendants to the maximum stan-In support, *705 dard sentence for a class A misdemeanor and that although he had deviated from that a "time or two," he had "never done it ... unless it was stipulated by Counsel." Based on these statements, the prosecutor's refusal to stipulate to a lesser sentence, and the trial judge's imposition of the maximum 865-day jail sentence, Sanchez asserts the trial judge improperly required a stipulation from the prosecutor before he would impose a shorter sentence, thereby delegating his sentencing duty. The State counters that because the judge "simply followed [his] ordinary practice of not reducing the sentence for a class A misdemeanor unless the prosecutor stipn-lated," the court did not delegate its judicial authority. We agree with the State.
113 "While sentencing courts take into account all the relevant cireumstances, ... the recommendations of the prosecutor or any other party are not binding upon the court." State v. Moreau, 2011 UT App 109, ¶11, 255 P.3d 689 (citations and internal quotation marks omitted); ef Utah R.Crim. P. 11(h)(2) ("If sentencing recommendations are allowed by the court, the court shall advise the defendant personally that any ree-ommendation as to sentence is not binding on the court."). In this case, the sentencing hearing transcript does not support Sanchez's claim that the prosecutor's recommendation dictated the trial court's ultimate decision. The relevant portion of the transcript is as follows:
[DEFENSE COUNSEL]: Your Honor, I'm not aware of any law that says the Court cannot sentence a person from zero to 865 [days for a class A misdemeanor]. THE COURT: Right, I agree with you. But 99.9 percent of the time, I don't do that, and I question, given the fact that Mr. Sanchez has been convieted of a Class A Misdemeanor, if it's appropriate for me to enter a different kind of a sentence than I do 99.9 percent of the time ... and the only reason that I would be doing that ... would be to say it's because I'm not sure that it's fair that Mr. Sanchez be deported. But that's not my decision.
[DEFENSE COUNSEL]: ... I've seen a couple of judges here in this district ... vary from the practice [but] most all do the same thing the Court does, that's 99.9 percent, probably.
THE COURT: I'll tell you, Counsel, I've done it a time or two. I've never done it, I don't believe, unless it was stipulated by Counsel.
THE COURT: [Prosecutor], what about it? You started with the position that [the sentence] ought to be 365 days because presumably that means that Mr. Sanchez would be deported.
[PROSECUTOR]: Well, that's the basis for the position that (Inaudible).... I've come to the same conclusion you have ... that is the normal Class A Misdemeanor sentence was 865 days.
THE COURT: What opposition would you have to the Court exercising its discretion to, say, 860 days as a statutory sentence instead of 8657
[PROSECUTOR]: I recognize that you have had (Inaudible). I've even heard of judges saying 864 days. THE COURT: Yes.
[PROSECUTOR]: I would oppose that; I would ask for 365 days.
THE COURT: Okay.
The trial court then sentenced Sanchez to the maximum standard sentence of 865 days, explaining that imposing the sentence was "the appropriate thing to do from a judicial standpoint." When the transcript is read as a whole, the trial court's reference to a stipulation was only an explanation of its usual practice of refusing to depart from maximum standard sentences absent a stipulation from the parties. We therefore do not agree with Sanchez that the trial court delegated its sentencing authority to the prosecutor.
1 14 In conclusion, the trial court did not exceed its discretion in sentencing Sanchez or in denying Sanchez's motion to reduce his conviction. Moreover, the court did not improperly delegate its sentencing authority to the prosecutor. Accordingly, we affirm Sanchez's sentence.

. Both of these counts in the information are third degree felonies. See Utah Code Ann. § 76-6-1102(3)(a) (LexisNexis Supp.2014); id. § 76-Unlawful possession 6-502 (LexisNexis 2012). of another's identification document is a class A misdemeanor. See id. § 76-6-1105 (LexisNexis 2012). f

. Even if the trial court had exceeded its discretion when it sentenced Sanchez to 365 days in jail, it would be harmless because the actual sentence imposed by the court is irrelevant to Sanchez's potential for deportation. As Sanchez notes, "[a] person who is in the country illegally is subject to deportation when convicted of certain crimes as set forth in 8 U.S.C.A. § 1227." Specifically, he cites the Immigration and Nationality Act: "Any alien who ... is convicted of a crime involving moral turpitude ... and ... is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." 8 U.S.C. § 1227(a)(2)(A)G) (2012) (emphasis added). Accordingly, because a class A misdemean- or is a crime for which a sentence of one year may be imposed and the trial court did not abuse its discretion in denying Sanchez's request for a section 402(1) reduction, Sanchez's actual sentence is irrelevant to the potential for deportation under the Immigration and Nationality Act. See id.; see also Utah Code Ann. § 76-3-204(1) (Lexis Nexis 2012).

. Sanchez cites two cases in support of his argument that the trial court should have taken into account his potential deportation when determining his sentence. In the first case, Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), the United States Supreme Court held that because "deportation is an integral part ... of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes," id. at 364, "counsel must inform her client whether his plea carries a risk of deportation," id. at 360, 373-74. But Padilla does not require trial courts to consider immigration status during sentencing. See id. In the second case, United States v. Jefferson, 925 F.2d 1242 (10th Cir.1991), the Tenth Circuit determined that a district court committed reversible error during the sentencing phase of a trial when it stated that it did not have the discretion to depart from the United States Sentencing Guidelines. Id. at 1247, 1259-60. According to Sanchez, Jefferson buttresses his claim that the trial court erroneously believed it could not exercise any discretion to sentence Sanchez to less than the maximum standard sentence. But because the trial court in this case did not state that it lacked discretion and because Jefferson does not address sentencing under Utah law, Jefferson is inapposite. See id. at 1259-60. Consequently, Sanchez's reliance on these cases is misplaced.