2020 UT App 4

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RONALD ALAN BLAIS,
Appellant.

Opinion
No. 20180509-CA
Filed January 3, 2020

Third District Court, Salt Lake Department
The Honorable Linda M. Jones
No. 171906926

Wendy Brown, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

APPLEBY, Judge:

¶1     Ronald Alan Blais was convicted of distributing a controlled substance and possessing a controlled substance with intent to distribute, both of which were enhanced to first-degree felonies due to a prior conviction. He also was convicted of giving false personal information to a peace officer, a class C misdemeanor. Blais challenges the sufficiency of the evidence to convict him of the felonies, alleges the district court abused its discretion in denying his motion to reduce the degrees of his felony convictions, and claims he was given an illegal sentence for the misdemeanor. We affirm his convictions, but we reverse the sentence for the misdemeanor count and remand for correction of that sentence.

BACKGROUND

¶2    Blais was arrested after a police officer (Officer One) observed him and two other individuals, a man (Man) and Blais's daughter (Daughter), selling drugs on a street. Officer One, who was four stories above Blais and his cohorts in a building across the street from them, used a spotting scope to survey the suspicious activity. The spotting scope gave Officer One "a clear view of what was going on below," including "details of faces." He observed buyers giving Daughter or Man money. Daughter "would then put [the money] in a backpack and then direct [the buyers] to" Blais, who "would give them some sort of object from his backpack or mouth." Occasionally, Daughter "would pull a pill bottle out of her backpack and dump what appeared to be small objects, [that Officer One] believed to be twists,[1] into [Blais's] hand, and he would either place them into his mouth or into his backpack." Two officers later testified that the pill bottle had a strong vinegar odor, which in their training and experience indicated "it was used to store heroin." There were two backpacks at the scene. One was on the ground between Blais and Daughter, and the other, which was "black and gray [and] had a [sporting goods] symbol," was on Blais's lap.

¶3    Officer One observed "about a dozen" transactions in which he could see twists. After Officer One saw Blais hand a buyer (Buyer) a black twist from his backpack, Officer One called in another officer (Officer Two) to arrest Buyer. After Officer Two informed Officer One that Buyer was in custody and

---

1. According to Officer One, "a twist is a piece of plastic, almost like a garbage-bag type of plastic, that drug dealers will place heroin or crack cocaine in, and then they wrap it and they twist it very tightly." *See also State v. Bowdrey*, 2019 UT App 3, ¶ 3 n.2, 438 P.3d 946 (defining a twist).

that Officer Two found a black twist in Buyer's possession, Officer One gave other nearby officers descriptions of Blais, Man, and Daughter, and of the suspects' locations. Using his spotting scope, Officer One "had eyes on [them] the whole time" and confirmed the officers detained the correct people. He also testified that none of the suspects left the area and no one else "looking like them" entered the area during his surveillance. The arresting officers later testified that the descriptions Officer One provided of the suspects were "spot on." Upon arrest, Blais did not produce identification and told the arresting officer multiple times that his name was spelled "Ronald Blaze."

¶4     After Officer One dismantled his surveillance equipment, he went to the scene where all three suspects were handcuffed and the other officers were in the process of searching the backpacks. Officer Two searched the backpack that was on the ground between Blais and Daughter and found a pill bottle with Daughter's name on it and "a large amount of cash" that, in his training and experience, was "indicative of . . . sales of drugs." Officer One searched the black and gray backpack that was on Blais's lap and found "two [white] twists of what appeared to be crack cocaine" inside. Blais was arrested and charged with distribution of a controlled substance (heroin), possession of a controlled substance (cocaine) with intent to distribute, each second-degree felonies, and providing false personal information to a peace officer, a class C misdemeanor.[2]

¶5     The officers seized and booked into evidence the cash, the white twists, and the black twist. Officer Two testified that booking evidence consists of packaging each piece of evidence, printing a receipt that is affixed to the package, taping the package closed, and signing the tape "so it can show that it

_____

2. Blais also was charged with possession of drug paraphernalia, but that charge was dismissed before the jury received the case.

hasn't been tampered with." Officer Two personally booked the evidence in this case and testified that he followed standard procedure in doing so.

¶6   At trial, Officer One positively identified a "white twist containing crack cocaine" that he found in the black and gray backpack. Officer Two then identified the black twist found on Buyer, and testified it was the only narcotic in Buyer's possession. A senior forensic scientist testified that he performed a "screening test and a confirmation test" on each twist and positively identified the substance in the white twists as cocaine and the substance in the black twist as heroin. He also testified that another person in the lab reviewed his results and confirmed his conclusions.

¶7   The forensic scientist testified about the crime lab's process of receiving and testing drugs and said applicable protocol had been followed in this case. Therefore, he was "confident that those results [we]re the correct results." The State also introduced into evidence the lab report from "this case," which included the case number, the lab's case number, and the forensic scientist's signature. The report also identified the substances as heroin and cocaine. On cross-examination, Blais asked the forensic scientist whether any DNA or fingerprinting tests were performed on the evidence and the scientist responded in the negative. Blais did not object to any alleged deficiency in the chain of custody.

¶8   Blais testified in his own defense. He claimed Daughter "might have asked" him to hold the black and gray backpack, that he was there only to "convince" her to leave her drug-addicted lifestyle, and that he did not sell heroin or possess crack cocaine. Blais emphasized that no drugs were found on him when he was arrested. The jury convicted Blais on all three counts. After the guilty verdict, the district court found that Blais's prior conviction of attempted possession with the intent

to distribute enhanced his convictions from second- to first-degree felonies.

¶9 Before sentencing, Blais moved for a reduction of his first-degree felony convictions to second-degree convictions, arguing that his history of mental illness warranted deviation and that, rather than a prison sentence, he should be given the opportunity to seek mental health treatment. The court denied the motion, reasoning that "the Utah legislature has indicated how those crimes should be handled appropriately" and noting that the drugs involved—heroin and cocaine—are "very dangerous substances." The court also said Blais was dealing drugs to "a vulnerable population . . . with his daughter" when he "could have been a role model to her, and instead [he] was just the opposite." The court observed that Blais "was caught in the act and he has continued to deny and minimize his conduct and his own history" and he already had unsuccessful "efforts in probation." The court then sentenced Blais to concurrent terms of five years to life in prison for each of the felonies and one year in prison for the class C misdemeanor.

ISSUES AND STANDARDS OF REVIEW

¶10 Blais raises three issues on appeal. First, he claims there was insufficient evidence to convict him of both distribution of a controlled substance and possession of a controlled substance with intent to distribute. Because this issue was not preserved at trial, Blais asks us to review these claims under the plain error exception to the preservation rule. *See State v. Graves*, 2019 UT App 72, ¶ 18, 442 P.3d 1228. "In considering an insufficiency of the evidence claim, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury," and "we will reverse a jury verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds

must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *State v. Maestas*, 2012 UT 46, ¶ 302, 299 P.3d 892 (quotation simplified). When, as is the case here, this issue is unpreserved, the appellant must also show "the insufficiency was so obvious and fundamental that the [district] court erred in submitting the case to the jury." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346.

¶11 Second, Blais asserts the district court erred in denying his motion to reduce his convictions from first- to second-degree felonies. "We review a [district] court's denial of a motion to reduce the degree of a conviction for abuse of discretion." *State v. Salt*, 2015 UT App 72, ¶ 9, 347 P.3d 414.

¶12 Finally, Blais contends he received an illegal sentence when the district court sentenced him to one year in prison for a class C misdemeanor. Whether a sentence is illegal is reviewed for correctness. *State v. Thorkelson*, 2004 UT App 9, ¶ 9, 84 P.3d 854.

ANALYSIS

I. Sufficiency of the Evidence

A. Distribution of a Controlled Substance

¶13 To convict a defendant of distribution of a controlled substance, the State must prove beyond a reasonable doubt that the defendant "knowingly and intentionally . . . distribute[d] a controlled . . . substance." Utah Code Ann. § 58-37-8(1)(a)(ii) (LexisNexis Supp. 2019).[3]

---

3. Because the material provisions of the statute have not changed since the incident in question, we cite the most recent

(continued…)

¶14　Blais argues there was insufficient evidence to convict him of distribution of heroin. Specifically, he claims "no evidence established that" the black twist found on Buyer "was the same [i]tem . . . that tested positive [for] heroin." He claims "the State essentially showed the jury a black plastic twist, from which the jury returned a verdict that Blais had distributed heroin," without evidence of "the physical characteristics of heroin." Not only was there sufficient evidence for this conviction, Blais has not demonstrated any alleged "insufficiency was so obvious and fundamental that the [district] court erred in submitting the case to the jury." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346.

¶15　First, Officer One, using a high-powered spotting scope, watched Blais, Daughter, and Man conduct "about a dozen" drug deals in which he could see twists. After Officer One saw Blais hand Buyer a black twist, Officer Two arrested Buyer and found only one drug on Buyer—a black twist of heroin. Second, Officer One observed Daughter "dump what appeared to be small objects" from a pill bottle into Blais's hand, which he then placed "into his mouth or into his backpack." When the pill bottle was recovered, it "had a strong vinegar-type odor," indicating it "was used to store heroin." Then, Officer Two positively identified the black twist as the drug he seized from Buyer upon arrest, immediately after Officer One watched the drug deal occur. Officer Two also testified to the evidentiary booking process by which he placed the twists into evidence, and the senior forensic scientist's testimony reiterated that all protocol was followed in this case and that the substance in the black twist positively tested as heroin. Not only was he "confident that those results [we]re the correct results," but the

--------

(…continued)
version of the Utah Code. *See State v. Lopez*, 2019 UT App 11, ¶ 25 n.3, 438 P.3d 950.

lab report from "this case" identified the black twist as containing heroin. Further, Blais did not raise an objection at trial regarding any alleged missing link in the evidentiary chain of custody; instead, he focused on the lack of DNA and absence of fingerprint analysis on the evidence. In fact, everyone at trial seemed to be working under the assumption that the twists recovered at the scene were the same twists the forensic scientist tested.

¶16   This constitutes sufficient evidence for a reasonable jury to find Blais "knowingly and intentionally . . . distributed" heroin, a controlled substance. Utah Code Ann. § 58-37-8(1)(a)(ii). Although the jury's conclusion necessarily required it to infer certain facts (for instance, that the black twist Blais handed Buyer was the same black twist confiscated from Buyer, that the black twist was the same twist that tested positive for heroin, and that the items Daughter dumped from her pill bottle into Blais's hand were twists), these are reasonable inferences drawn from the evidence presented at trial. *See Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067 ("A jury draws a reasonable inference if there is an evidentiary foundation to draw and support the conclusion."). That the charge of distribution of a controlled substance went to the jury does not amount to plain error.

B.     Possession of a Controlled Substance with Intent to Distribute

¶17   To obtain a conviction for possession of a controlled substance with intent to distribute, the State must prove beyond a reasonable doubt that the defendant "knowingly and intentionally . . . possesse[d] a controlled . . . substance with intent to distribute." Utah Code Ann. § 58-37-8(1)(a)(iii) (LexisNexis Supp. 2019).

¶18    Blais claims there is insufficient evidence to convict him of possession of cocaine with intent to distribute. He alleges that "no evidence established" that the white twists recovered from the backpack on Blais's lap were the same items that tested positive for cocaine. He also asserts that no differentiation was made at trial between the two backpacks at the scene, "thus never allowing the jury to properly consider whether Blais was in possession of the same backpack that contained the white twists." These arguments are unavailing.

¶19    First, Officer One observed "about a dozen" transactions in which he could see twists. He also saw two backpacks, one on the ground between Blais and Daughter and one—black and gray with a sporting goods logo—on Blais's lap. When Officer One responded to the scene, he searched the black and gray backpack. Inside that backpack, he "found two twists of what appeared to be crack cocaine," which he "collected . . . and put . . . in evidence bags." Officer Two testified that he booked the white twists into evidence, and the senior forensic scientist testified that all crime lab protocol was followed in this case. At trial, Officer One positively identified one of the white twists as the same he had recovered from the black and gray backpack that was "[o]n [Blais's] lap when [Officer One] first observed him." Further, the forensic scientist testified that he tested the substance and confirmed it was cocaine and that he was "confident that those results [we]re the correct results." The lab report from "this case" was entered into evidence and identified the substance from the white twist as cocaine. As previously discussed, *supra* ¶ 15, Blais's failure to raise an objection regarding any alleged missing link in the chain of custody does not indicate a lack of evidence but, rather, that all parties at the trial appeared to agree that the twists seized at the scene were the same that were tested and presented at trial.

¶20    This evidence sufficiently supports not only that the substance recovered from the black and gray backpack was

cocaine but that the black and gray backpack was in Blais's possession, and we therefore discern no error in the court allowing the charge of possession of a controlled substance to be submitted to the jury, let alone an error that is "obvious and fundamental." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346.

## II. Motion to Reduce Convictions

¶21 Blais also argues that the district court erred when it denied his motion to reduce his first-degree felony convictions to second-degree convictions. A district "court may enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly" if it "concludes it would be unduly harsh to record the conviction as being for that degree of offense" for which the defendant was convicted. Utah Code Ann. § 76-3-402(1) (LexisNexis 2017). In making this determination, the court must take into account "the nature and circumstances of the offense" and "the history and character of the defendant." *Id.*

¶22 Blais claims the district court abused its discretion in denying his motion to reduce his convictions because it "failed to consider all the legally relevant factors," namely his history of mental illness and request to instead be treated at an inpatient mental health program. (Quoting *State v. Sanchez*, 2015 UT App 58, ¶ 5, 346 P.3d 701 (quotation simplified).) We disagree. The court explained why it denied Blais's motion, noting that heroin and cocaine are "very dangerous substances" and that Blais was dealing those drugs to "a vulnerable population . . . with his daughter" when he "could have been a role model to her, and instead [he] was just the opposite." The court also noted Blais "was caught in the act," yet had "continued to deny and minimize his conduct and his own history," and that Blais already had unsuccessful "efforts in probation." Although the court did not explicitly state the weight it gave to Blais's mental illness and his desire to seek treatment, we "presume that the

district court made all the necessary considerations." *State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985; *see also State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626 (noting the "general rule" that an appellate court, in reviewing a district court's sentencing order, "upholds the [district] court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings" (quotation simplified)). The court therefore did not abuse its discretion.

## III. Illegal Sentence

¶23 Blais argues, and the State concedes, the district court erred when it sentenced Blais to one year in prison for providing false information to a peace officer, a class C misdemeanor. A conviction of a class C misdemeanor may result in "imprisonment . . . for a term not exceeding 90 days." Utah Code Ann. § 76-3-204 (LexisNexis Supp. 2019). Because the court sentenced Blais to more than ninety days in prison for this conviction, we reverse his sentence on this count and remand to the district court to correct it.

## CONCLUSION

¶24 Sufficient evidence supports Blais's convictions of distribution of a controlled substance and possession of a controlled substance with intent to distribute, and the district court did not abuse its discretion in denying his motion to reduce his convictions from first-degree felonies to second-degree felonies. We thus affirm those convictions. But because the district court erred when it sentenced Blais to more than the statutory maximum for a class C misdemeanor under Utah law, we reverse that sentence and remand to the district court for correction.